SANFORD v. KEPNER.

No. 3370.

United States District Court
M. D. Pennsylvania.

July 9, 1951.

J. Preston Swecker, (of Cyrus Kehr & Swecker) Washington, D. C., Marshall R. Anspach, Williamsport, Pa., for plaintiff.

Gilbert P. Ritter, (of Ritter, Mechlin & Muir), Washington, D. C., George R. Ericson, St. Louis, Mo., John C. Youngman, Williamsport, Pa., for defendant.

FOLLMER, District Judge.

This action is the outgrowth of an interference proceeding in the Patent Office, No. 82,623, declared by the Commissioner of Patents between the party Sanford and the party Kepner to determine which of them was the prior inventor of certain patentable subject matter common to their respective applications for patent, namely, Kepner Application Serial No. 497,286, filed August 4, 1943, and Sanford Application Serial No. 571,170, filed January 3, 1945. Consequently, upon the decision of the Board of Interference Examiners of the Patent Office in Interference No. 82,623, awarding priority of invention of the subject matter in issue to Kepner, Patent No. 2,487,447 was granted to him as provided in R.S. § 4904, 35 U.S.C.A. § 52.

The complaint was filed under Section 4915 of the Revised Statutes, 35 U.S.C.A. § 63, and seeks a review of the action of the Patent Office in Interference No. 82,623, as aforesaid, and the issues raised are priority and patentability.

■ At the outset of the trial the Court indicated that it would hear the complete case, both as to priority and patentability, and if it became necessary in the determination of priority, the Court would consider the prior art so far as necessary for that purpose; that in the event the primary issue of priority would be determined adversely to the plaintiff, no consideration would then be given to the validity of the defendant's patent, since a 4915 action is not intended to test the validity of a patent. In other words, the Court took its position with the line of cases that holds that in a 4915 action patentability need not be considered where the claimed priority is not established, and, by the same token, when

the one seeking the decree under 35 U.S.C. A. § 63 prevails in the trial court upon the question of priority, the patentability of his claim must be decided.[1] With that concept in mind, after a full and complete trial, and on consideration of the evidence, oral arguments and briefs of counsel, I find it unnecessary herein to consider the question of patentability. The basic required formula to be followed in the attempted solution of a controversy such as we have here is that propounded in Morgan v. Daniels, 153 U.S. 120, at page 125, 14 S.Ct. 772, at page 773, 38 L.Ed. 657, as follows:

"Upon principle and authority, therefore, it must be laid down as a rule that where the question decided in the patent office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction. * * *",

The parties to this action and to the above mentioned interference proceeding in the Patent Office are the same and the issue herein, to wit, priority of invention of the subject-matter involved in the said interference, is likewise the same as there decided.

■ Plaintiff as the junior party had the burden of proof in the Patent office proceeding; as the complainant here he has the burden of meeting the requirements of the Morgan v. Daniels, supra, formula. Walker on Patents (Deller's Edition) Vol. 2, Pages 971–972, states: "The burden is on the complainant to prove the truth of his bill, by evidence that is clear and conclusive * * *. Such an action has the characteristics of a proceeding to set aside a judgment and as such, is not to be sustained by a mere preponderance of evidence. * * *"

The general subject-matter of the patent applications disclosing the invention in controversy is a device for unlocking the door supporting latch of a mine car of the

1. Cleveland Trust Co. v. Berry et al., 6 Cir., 99 F.2d 517; Heston et al. v. Kuhlke et al., 6 Cir., 179 F.2d 222.

drop bottom type to allow the door to open for the discharge of lading. Specifically, the device consists of a tripping mechanism which is positioned in the trackway and is provided with a latch releasing member or element which is constantly pressed upwardly by a spring to an elevated position above the trackway so as to project into the path of the door latch as the car moves over the track for dumping and thus releases the door latch by coming in contact therewith as the car passes along the track.

The claims, directed to the invention common to the interfering applications, are stated in the four counts of Interference No. 82,623, Sanford v. Kepner, and are as follows:

"*Count 1* In conveying mechanism, the combination with a trackway, a dumping conveyance movable along the trackway and including a lading body with a drop bottom door, and latch means for holding the door closed and movable to release the door for opening, of tripping mechanism including means for actuating the latch to release the door, and separate means laterally spaced from said release means and substantially in the same upright transverse plane as said release means and actuated by bearing engagement with the under portion of the vehicle moving over the tripping mechanism for controlling the release means.

"*Count 2* In conveying mechanism, the combination with a trackway, a dumping conveyance mounted on the trackway and including a lading body with a drop bottom door and latch means for holding the door in closed position and movable to release the door for opening, said latch means being located wholly above the lowest portion of the lading body in the same longitudinal vertical plane of the conveyance, of tripping mechanism mounted at the trackway and including an engaging member mounted for upward movement relative to the trackway in position for engaging the latch means during movement of the conveyance over the tripping mechanism to release said door, yieldable means normally tending to hold said engaging member in an elevated position, and a contact member substantially fixed relative to the releasing member and movable therewith in position to be raised and lowered by engagement with the under surface of the conveyance during movement thereover.

"*Count 3* In conveying mechanism, the combination with a trackway, a dumping conveyance movable along the trackway and including a lading body with a drop bottom door, and latch means for holding the door closed and movable to release the door for opening, of tripping mechanism mounted at the trackway and including latch release means in position to engage the latch means during movement of the conveyance over the tripping mechanism to release the door for opening, and means fixed relative to the latch release means and located at substantially the same elevation as said latch release means when said latch release means is in latch engaging position, and said means being in position for engagement by the under surface of the conveyance during movement thereof over the tripping mechanism for controlling the releasing position of the latch release means.

"*Count 4* In conveying mechanism, the combination with a trackway, a dumping conveyance movable along the trackway and including a lading body with a drop bottom door, and latch means for holding the door closed and movable to release the door for opening, of tripping mechanism mounted at the trackway and including an engageing (sic) member mounted for upward movement to a position for engagement by the latch means during movement of the conveyance over the tripping mechanism, a contact member fixed relative to said engaging member and extending to substantially the same elevation to be guided along the under surface of the conveyance to depress the engaging member beneath the conveyance, and yielding means normally tending to hold said engaging member in a raised position relative to the trackway."

Plaintiff contends that the counts of the interference involve the track, the conveyance, the latch at the back, and the tripping device, all as one combination; and that the patent involves the entire structure of the protected latch car. Defendant, on the other hand, takes the position that the

issue here is solely, "who was the prior inventor of the invention for latch tripping mechanism disclosed in the Sanford application No. 571,170 and the Kepner application No. 497,286 for releasing the latch of the protected latch car."

Plaintiff argues, "The defendant must show that he was the first to invent every element in the claim or the complete combination of elements before he is entitled to an award of priority." If this contention is sound, no valid claim for an improvement applicable to an old apparatus or device could ever be granted. As a matter of fact, the Sanford Application Serial No. 571,170, herein involved, states that the invention there disclosed is "for the improvement in Latch Tripping Mechanisms set forth in the annexed specification;" Furthermore, in the specifications, at Page 1, it specifically states that "This invention relates to improvements in Latch Tripping Mechanisms, particularly for mine cars and other conveyors having drop bottom doors for discharge of the lading therefrom."

■ The drafting of the claims here involved followed the customary pattern employed when the new invention is an improvement of a particular part or portion of an old device; the claims reciting the features of the new invention and, in combination therewith, such features of the old apparatus or device as are necessary to point out the relation of the improvement to the parts of the old apparatus with which the improvement co-operates; it is in this manner that the functional purposes of the alleged improvement are made manifest. This matter was fully covered by the Supreme Court in Williams Manufacturing Co. v. United Shoe Machinery Corp., 316 U.S. 364, at page 369, 62 S.Ct. 1179, at page 1182, 86 L.Ed. 1537, as follows:

" * * * In describing the novel combinations embodied in the claims, it was necessary to make reference to certain portions of the machine in connection with which the new combinations were to operate and with which they were to dovetail, but, in mentioning these other mechanical parts, the claim does not purport to embody them as elements of the claimed combination. To construe such a claim for a com-bination of new elements intended to be embodied in some well recognized mechanical aggregation, such as a sewing machine or a washing machine, as a claim covering all the mechanical details, or all the well known parts of the machine, would be to nullify every patent for an improvement in a type of machine long in use and would invalidate thousands of patents for improvements in standard machines. It would be difficult to describe an improvement in a washing machine without naming such a machine as the thing to which the patent is addressed, and equally difficult to refrain from referring to various parts of the machine, such as the tub or the motor which actuates the washer. But it has never been thought that a claim limited to an improvement in some element of the machine is, by such reference, rendered bad as claiming a monopoly of tubs or motors used in washing machines."

■ Plaintiff further contends that the testimony of Dendler, and of the defendant Kepner himself, justified the inference that Dendler and not Kepner invented certain features so far as they are incorporated in the dump car unlatching mechanism which is here in controversy. This contention is completely inappropriate, for as stated in Luellen v. Claussen et al., 43 App. D.C. 444, "The question for determination in the present case is which of the parties thereto is entitled to the award of priority, and the question whether a third party may subsequently defeat the successful party here is beside the issue and may not be raised."

Also, as the Court of Customs and Patent Appeals in Cooper v. Hubbell, 53 F.2d 1072, at page 1078, 19 C.C.P.A.,Patents, 790, stated: " * * * Appellant would not be entitled to an award of priority as against appellee even if the proof established that the invention was in fact made by other persons. Foster v. Antisdel, 14 App.D.C. 552. The issue in an interference proceeding is not whether a senior party may be entitled to priority as against all persons, but the question is whether the junior applicant has sustained the burden of establishing his own priority over that of his opponent. Beidler

v. Caps & Leininger, 36 F.2d 122, 17 C.C. P.A. [Patents] 703."

The issue here is a very narrow one, namely, the priority between the junior party, Sanford, and the senior party, Kepner, of the invention of a certain latch tripping mechanism for releasing the latch of a protected latch car. We are not concerned with any other portion of the structure to which this functional device becomes a part, nor are we concerned with the prior inventive activities of any third party alien to these proceedings. What testimony then has plaintiff offered in his effort to overrule the otherwise controlling Patent Office decision as to priority of invention, and did the proffered testimony in character and amount carry thorough conviction? To attain this objective the plaintiff endeavors to overturn the finding of the Board of Interference Examiners that the latch tripping mechanism allegedly installed and tested at the rock bin of the Pruden Coal Company mine in 1942 was "nothing more than an abandoned experiment", and that "commercial use or success of the device is not necessary in order to constitute a reduction to practice but it must appear that the inventor himself is satisfied as to the practicability of the device for its intended purpose. It is quite obvious from a reading of the record that Sanford did not consider his device as practical at the time of the test at Pruden."

I am not only in complete accord with this conclusion but find it confirmed in Sanford's oath to his application No. 571,-700, filed January 3, 1945, in which, apparently to meet the statutory requirement of a lawfully filed application for patent, he swore that he did not believe that the invention described and claimed therein was "in public use or on sale in the United States for more than one year prior to this application."

The opinion of the Board of Interference Examiners stated, inter alia: "The device which was removed from the Pruden Coal Company has become lost and could not be found on diligent search, however, a device was constructed during the taking of testimony allegedly like that used at the Pruden Company and introduced in evidence as Sanford Exhibit 29. Tests were run on the reconstructed device to show its mode of operation. Obviously these tests cannot be relied upon as a *nunc pro tunc* reduction to practice." [2]

Concerning the Pruden test in 1942, the plaintiff submitted, for the consideration of the Court, depositions of Robert E. Jones and the party Sanford; and the testimony of Roy E. Linville, Howard A. Page, D. E. Griffith, and Edward R. Hughes.

The evidence of Jones and Sanford is definitely opinion evidence, and both in their depositions of January 7, 1948, which are a part of the record of the Patent Office proceeding, admitted that they had never seen the device installed at Pruden in operation. Sanford's deposition of April 4, 1950, again admits that he had not seen the device in use at Pruden after its installation there in 1942, nor indeed had he seen the reinstallation at Pruden in 1948.

The testimony of Roy E. Linville, both in the Patent Office proceeding and in the instant proceeding, is completely lacking in any suggestion that he ever saw the device in operation at Pruden as allegedly installed for testing in 1942.

The new testimony of Howard A. Page concerning the construction and operation of the alleged device at Pruden in 1942 is not convincing. While he stated that he helped to install the device at Pruden in 1942, he had nothing to do with its operation. His testimony was given from memory and was to a degree hearsay.

2. This same device, which was built in 1948, was reinstalled in 1950. Considerable testimony was introduced tending to show its inefficiency and also a substantial variance in the materials used in its construction from that of the 1942 device of which it was supposed to be a duplicate. I have not felt it necessary to consider either the inefficiency of the reinstallation or the variance of materials used, neither of which received consideration in the opinion of the Board of Interference Examiners and are not essential elements to the conclusions reached by the Board.

D. E. Griffith appeared to be the only witness produced by Sanford who saw the device in operation at Pruden in 1942, and his testimony adds nothing of a substantial nature to his testimony given in the Patent Office proceeding.

The remaining witness was the expert, Edward R. Hughes, who admitted that he had never seen the device alleged to have been installed at Pruden in 1942. His testimony is, therefore, a completely theoretical opinion, and obviously is a direct attack on the patentability of the Kepner patent. A great portion of his testimony was devoted to a consideration of the prior art and its relation to the applications for patent here involved. None of this testimony could be considered as having any relevancy to the question of priority, which, as we have previously indicated, is our first and primary concern. This witness also testified at considerable length as to the readability and interpretation of the claims in suit. Evaluating this portion of the testimony in a light most favorable to the plaintiff, it certainly did not in my opinion qualify as being sufficiently impressive to overcome the decision of the Patent Office.

■ In Solomon v. Renstrom, 8 Cir., 150 F.2d 805, at page 808, the court, citing Morgan v. Daniels, supra, stated: " * * * The interpretation of the claims of a patent is not to be determined by the opinion of experts, but is a question of law for the court. * * * The additional evidence was therefore simply advisory. The court was not required to accept it even though it may have stood without contradiction. * * * " and 150 F.2d on Page 809: "In the final analysis, this case presents a situation in which the only testimony introduced at the trial that had not been introduced and considered by the Court of Customs and Patent Appeals was in the nature of opinions of expert witnesses. As already observed, the trial court was not bound to credit this character of testimony, and it affirmatively appears that the court rejected it. It can not therefore be said that a conclusion contrary to that adopted by the Court of Customs and Patent Appeals was established 'by testimony which

in character and amount carries thorough conviction.' "

See also Smith et al. v. Carter Carburetor Corporation, 3 Cir., 130 F.2d 555, 560. As the court stated in the Smith case, "where all of the tribunals which pass upon a question of priority in an interference proceeding in the Patent Office reach the same conclusion with respect thereto, a court will not overrule that conclusion unless error therein appears very clearly."

 The plaintiff has completely failed to sustain his burden of establishing "by testimony which in character and amount carries thorough conviction", that the decision of the Board of Interference Examiners is incorrect.

This Opinion contains a statement of the essential facts and of the law applicable thereto in conformity with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C. The complaint must be dismissed.