**TURCHAN et al. v. MARZALL,**
**Commissioner of Patents.**

No. 2052–51.

United States District Court
District of Columbia.

June 13, 1952.

M. E. Jones, Washington, D. C., and Thomas S. Donnelly, Detroit, Mich., Sol. of Record, Bryant & Lowry, Washington, D. C., for plaintiff.

E. L. Reynolds, Sol., U. S. Patent Office, Washington, D. C., for defendant.

TAMM, District Judge.

In this action the plaintiffs seek the issuance of a patent. The claim involved has been finally rejected by the Board of Appeals of the Patent Office, and the plaintiffs have come to this Court to have the decision of the Patent Office reviewed. They are entitled to do so under Section 4915 of the Revised Statutes, as amended. Section 63, Title 35, U.S.C.A.

The claimed invention of the plaintiffs consists of certain improvements in hydraulic duplicating lathe attachments. The alleged invention comprises, among other things, a hydraulically operated duplicating mechanism adapted for mounting on a lathe and having a tracer for contacting and riding over the pattern or template. This tracer controls the operation and movement of a cutter operating on a workpiece, so that the cutter reproduces on the workpiece the contour or outline of the pattern or template. According to the specification of the plaintiffs' claimed invention, the cutting mechanism is carried on a movable slide which is extended angularly to the longitudinal axis of the lathe. This slide is movable inwardly and outwardly of the workpiece at an angle which is specified as being a 45° angle to the axis of the workpiece.

Although the plaintiffs presented a series of claims to the Patent Office, their complaint filed in this Court alleged that only two claims, Numbers 36 and 38, were improperly rejected. According to a stipulation entered into before the hearing of this case, however, counsel agreed that claim Number 38 was properly rejected by the Patent Office. Thus, the only claim to be examined by the Court is Number 36. A statement of this claim follows:

"36. A contour turning lathe for reproducing tapers, curves, right-angle shoulders or undercut shoulders on the work in conformity with the profile of a template, including a headstock and a tailstock for holding and turning the work, a carriage, means for guiding the carriage longitudinally of the work, means for moving the carriage at a constant rate of advance, a template disposed in fixed position aligned with the axis of the work with its profile in a plane parallel with the cutting plane, a top slide, a cross slide movably mounting the top slide on the carriage whereby the top slide is adapted to reciprocate at an angle to the axis of the work acute in the direction of carriage travel, tracer mechanism mounted on the top slide having a finger which engages the template and is universally movable relatively to the tracer mechanism in the plane of said profile and is responsive to relief and impedance from the template, including longitudinal impedance, and a hydraulic system including a motor for reciprocating the top slide, said system so connecting the tracer and the motor that actuation of the tracer by the template operates the motor to move the top slide to neutralize the actuation of the tracer, thus reproducing on the work the profile of the template."

The above claim was rejected by the Patent Office solely on the ground that the plaintiffs in their original application for letters patent failed to disclose the subject matter set out in this claim. Although the Examiner rejected the claim on the further ground of lack of inventiveness, the Board of Appeals overruled the Examiner on this issue, specifically holding that the claim was patentable over the prior art of record. The issue before the Court, therefore, is strictly one of disclosure.

It is the position of the Patent Office that the plaintiffs' application as filed did not include a disclosure of two limitations, which form parts of claim 36. These limitations, as quoted from the claim, are:

1. " * * * a template disposed in fixed position aligned with the axis of the work * * *"

2. " * * * tracer mechanism mounted on the top slide having a finger which engages the template and is universally movable relatively to the tracer mechanism in the plane of said profile * * *"

The plaintiffs maintain that the first of the above limitations is explicitly disclosed in the original application in that the term "aligned" is sufficiently broad to include the relationship of parts shown in the original drawings and that the meaning of this term is clear to those skilled in the art. With regard to the second limitation, the plaintiffs contend that the specification, as originally filed, did disclose a tracer which is universally movable.

It is the position of the defendant that the term "aligned" as used in the claim does not

conform to the application drawing, and thus is not supported by the original disclosure. The defendant argues also that the application as filed did not inherently disclose a universally mounted tracer for the reason that the plaintiffs have not proved that other types of tracers will not perform in the manner described in the application.

The Court turns first to the limitation of the claim which sets forth, " * * * a template disposed in fixed position aligned with the axis of the work * * *." The key word in this phrase is "aligned". The plaintiffs contend that it was sufficiently disclosed in their original application that this word was used as a synonym for the word "parallel". The defendant denies that this is the case. An important phase of the defendant's argument is that the accepted "common usage" definition of "align" is "the placing of things in a line" and, consequently, this limitation calls for a linear registration of the axis of the template and that of the workpiece. In support of this definition the Patent Office has cited Webster's Collegiate Dictionary, Third Edition.

As originally filed, the word "align" was used in the specification of the applicant. It was there stated, "In practice it is necessary to align the axis of the template or model with the axis of the work piece". The plaintiffs seek to establish disclosure on the basis of both positive and negative arguments. That is, they have presented to the Court evidence which tends to prove affirmatively that the word "align" sufficiently discloses the concept of a parallel disposition and, on the other hand, they have attempted to demonstrate that the interpretation of this word suggested by the defendant could not be accurate in the setting of the plaintiffs' application.

■■ In establishing their position, the plaintiffs point out that, as originally disclosed, there was set forth a lathe having a bed, a slidable carriage, a cross slide mounting on a slidable carriage and movable at right angles thereto, and a third or angular slide mounted on the cross slide and movable angularly to the length of the lathe bed. These slides were positioned one above the other in a parallel relationship. In all of the claims originally presented, the

cutter carrying or top slide, which is the angular slide, was defined as being "in alignment" with the lower slide. From this, the plaintiffs argue that it is clear that they were using the word, "aligned", as a synonym for the word, "parallel". This argument appears to the Court to be sound. In resolving any ambiguity of meaning existing in the language of a claim, it is accepted practice to look to the specification and drawings for enlightenment. When that is done in this case, one learns that the word "aligned" of the claim means parallel. Although the Patent Office has relied on the dictionary meaning of the word, it does not appear to the Court that the definition of the word, "align", found therein is in any sense controlling. As was stated in Jones v. Sykes Metal Lath & Roofing Co., 6 Cir., 1918, 254 F. 91, 96:

> " * * * a patentee is at liberty to supply his own dictionary; the terms of a claim should be taken in the same sense given in the lexicon of the specification."

Since it is clear from the specification that the plaintiff used the word "aligned" to mean parallel, the Court holds that the subject matter of this limitation of the claim was sufficiently disclosed.

The Court is not required to rely solely on the matter set out above in holding that there is no lack of disclosure with regard to this limitation. At the trial of this case, two witnesses for the plaintiff who were men of extensive experience in and comprehensive knowledge of the construction and operation of this type machine, testified that the word "aligned" is universally used and understood by those skilled in the art, to mean that the template extends with its axis in a direction parallel to the axis of the work piece. This testimony went uncontradicted by the defendant. The specification and claims of a patent are addressed to those who possess technical knowledge and skill in a given area; they are not addressed to the public generally. Since the uncontradicted testimony of the plaintiffs' witnesses establishes that those skilled in the art understand that the word " aligned" is used as a synonym for "parallel", a further ground appears for the Court's holding

that there is sufficient disclosure in this limitation of the plaintiffs' claim.

In support of their position that the usage of the term "aligned" is proper, the plaintiffs have cited Victory Belt Co. v. Marshall Field & Co., 7 Cir., 1924, 300 F. 67. In that case the Court was dealing with a patent claim in which certain parts were said to be "aligned". In its opinion, the Court found, 300 F. at page 71, that the plaintiff used " * * * the word 'align' to mean, to run in the same direction, referring to the relative lineal direction of the two end portions when they are doubled, not that the ends are of the same length, but that the end portions are 'arranged' in a line, or row, or rows and are in two parallel planes." That Court concluded, "Such use of the (word) is proper." This Court is of the opinion as well that under the circumstances of this case, the plaintiffs' use of the word "aligned" to mean parallel was proper.

In making its negative argument, the plaintiffs rely on: (1) the original drawings, (2) the language of the original specification and (3) a comparison of the original and amended drawings. They seek here to demonstrate that the dictionary definition of "aligned" suggested by the Patent Office cannot have any application in this case.

(1) *Original drawings.* The plaintiffs argue that it is clear from an examination of the drawings originally submitted in connection with this application that the template is not in "lineal registration" or "in line" with the axis of the work piece, as would be the case if the definition of the Patent Office were accepted. The Court has reviewed these drawings and is in agreement with the contention of the plaintiffs. Indeed, it is difficult for the Court to see how there can be any basis for the definition of "aligned" urged by the Patent Office when the original drawings are consulted.

(2) *Language of specification.* In the original specification the following language appears:

"In practice it is necessary to align the axis of the template or model with the axis of the work piece. To accomplish this, screws 83 are manually adjusted to effect the proper angular positioning of pivotal member 18′ upon its slide support 18."

The plaintiffs point to this language and argue that it is obvious that by determining this angular position, as set out in the specifications, the axis of the template could *never* be brought into lineal registration with the axis of the work piece and, therefore, such meaning could not have been applied to that word when used by the applicant in the application as filed. This argument impresses the Court as being sound. For the member 18′ referred to is the template support and by setting it in the angular position according to the specification linear registration of the axis of the template with the axis of the work piece is rendered impossible, while a parallel relationship is not.

(3) *Comparison of drawings.* The wording of the claim presented to this Court was suggested by the Patent Office Board of Appeals. In adopting the word "aligned" in this claim, the Board of Appeals was not basing such adoption upon any new matter which was submitted by amendment or in the new drawings. In the drawings submitted by amendment, Figure 9 is the only drawing in which the template is shown in connection with the work piece. An examination reveals that there is nothing shown in Figure 9 so far as the template and the work piece are concerned that is not shown in Figure 1 of the original drawings in exactly the same manner. Therefore, the disclosure of the application as originally filed must have formed a basis for this word when it was used in the claim by the Board of Appeals. As the Court has already observed, it is clear from the original drawings (Figure 1) that there was no linear registration between the axis of the template and that of the work piece. The Court concludes from this that in using this term, the Board of Appeals could not have intended it to mean that which the Patent Office now suggests it means.

On the basis of these arguments, it appears to the Court that a utilization of the

dictionary definition of this word in this setting is unwarranted and improper.

The language of the specification and the testimony of the plaintiffs' witnesses compels the Court to conclude that the limitation of the claim here under consideration sufficiently discloses that a parallel disposition of the axis of the template and that of the work piece is required by the plaintiffs' patent.

The second limitation of the claim challenged by the defendant is the following:

"  *   *   *   tracer mechanism mounted on the top slide having a finger which engages the template and is universally movable relatively to the tracer mechanism in the plane of said profile  *   *   *."

The plaintiff has argued to the Court that it was clear from the original application that the patent called for a tracer which is universally movable. In developing their argument, the plaintiffs have relied first on an analysis of the specifications and second, upon the doctrine of inherency.

■ Without incorporating in the body of this opinion the drawings filed by the plaintiffs in connection with their application, it is difficult for the Court to set forth the reasoning which compels it to find that these original drawings and specifications call for the utilization of a universally mounted tracer mechanism. At the hearing of this case and again in the brief which they filed after trial, the plaintiffs have traced the operation of this mechanism. Their presentation was based entirely on the language of the original specifications and, concomitantly, the drawings. In so doing, they have made it abundantly clear to the Court that the tracer mechanism described was universally movable. This is not to say, however, as the plaintiffs would have it said, that it appears to the Court from the material of the application that *only* a universally movable tracer mechanism will operate under the claim as it is set forth. If the plaintiffs are to prevail in this action, however, it is essential that the Court make the finding requested. The necessity of the Court's finding that a universally movable tracer mechanism, and

no other type tracer mechanism, is disclosed in the plaintiffs' application stems from the doctrine of inherency. This doctrine teaches that if one discloses in his patent application that a required device must of necessity be of a nature, peculiar and certain, to the exclusion of any device of a similar or allied nature, the patentee has sufficiently disclosed the device required, even though he says nothing concerning it. See: Chicago & N. W. Railway Co. v. Sayles, 97 U.S. 554, 24 L.Ed. 1053; Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 573, 59 S.Ct. 8, 83 L. Ed. 34; In re Crowell, 84 F.2d 206, 23 C.C. P.A., Patents, 1246; In re Betz, 166 F.2d 831, 35 C.C.P.A., Patents, 1033. Thus, the doctrine of inherency requires conclusive proof in this case that no tracer, other than one mounted for universal movement, would be operative in the plaintiffs' machine. Because of its limited knowledge in this technical area, the Court must turn to those who are skilled for counsel and advice in its attempt to determine whether the doctrine of inherency applies in this case.

The plaintiffs' expert witnesses to whom the Court has referred above both testified that a mechanic, skilled in the art, would know from the delineation of the specification that a tracer having a universally movable finger or spindle was being described. They went further and stated that in order for this mechanism to operate according to the application's disclosure, the tracer finger *must* be universally movable. At the hearing of this cause, these witnesses examined a number of patents, one of which was dated 1894, on automatic reproducing mechanisms. In each case, the testimony was to the effect that a universally movable tracer mechanism was employed. It appears from this testimony that this type tracer was commonly employed for a considerable period of time. The Court does not understand that the Patent Office disputes this. The record made in the Patent Office discloses that the Examiner referred to universal tracers as being "notoriously old". This being the case, it appears to the Court to be reasonable to accord considerable weight to the testimony of the plaintiffs' witnesses that the specification and

drawings of the plaintiffs' application demand the utilization of a universally movable tracer mechanism.

But there is another source of expert knowledge on which the Court can and must rely. That source, of course, is the Patent Office itself. Their counsel to the Court, embodied in the opinions of the Examiners and Board of Appeals, and tendered by counsel in oral and written argument, must be accorded great weight. The question presented to the Court is a technical one. It is a question which the Patent Office is pre-eminently qualified to solve. The rule is that while the judgment of Patent Office officials is not absolutely binding on the Courts, it is entitled to great weight, and is to be overcome by clear proof of mistake. Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657.

The defendant does not deny that a universally mounted tracer will operate in the plaintiffs' machine. Their position is that the application as filed did not inherently disclose this type tracer since it is not clear that other types of tracers will not perform in the manner described in the application.

In the absence of any showing on the part of the defendant that there is some other type tracer that would operate in the plaintiffs' patent, the Court would have to hold that the plaintiffs have sustained their burden of proof in this case. The defendant, however, has argued that as an alternative to a universal mounting for the tracer, a tracer mounted to pivot in a single plane at an angle to the work axis would operate to carry out the functions described for the tracer shown in the original application. They have cited a patent granted to one Von Zelewsky, Number 2,437,570, to establish their argument that a pivoted tracer will serve the requirements of the plaintiffs' application. Because of its importance to a proper decision of this case, the Court has examined the Von Zelewsky patent with considerable care. This examination leads the Court to the conclusion that a pivoted tracer could not be employed in the structure disclosed in the plaintiffs' application. It is clear from a reading of Von Zelewsky that it was not intended in that patent to employ a single cutting tool to cut rising shoulders. On the contrary, a pair of cutting tools are required to reproduce the template pattern on the work piece if a rising shoulder is encountered. This is due to the fact that a pivotally mounted tracer swingable in a single plane will not cut rising shoulders. The plaintiffs' application, on the other hand, manifestly contemplates that rising shoulders be reproduced on a work piece through the utilization of a single cutting tool. Since the plaintiffs' application demands that which cannot be accomplished by a pivotally mounted tracer, the Court cannot but hold that the defendant has failed to demonstrate that another type tracer will operate under the original specifications and drawings of the plaintiffs.

Since the testimony, expert and unrefuted, before the Court is to the effect that one skilled in the art would know from the original application that the tracer mechanism called for in the limitation of the claim here under consideration is to be universally movable to the exclusion of any other type mechanism, the Court concludes that there is sufficient disclosure in this limitation.

Both limitations of the plaintiffs' claim challenged by the Patent Office sufficiently disclose that which is claimed. Consequently, the Court holds that the plaintiffs are entitled to a patent. In taking this step, this Court, which has the greatest respect for the competence and judiciousness of the personnel of the Patent Office desires to point out that its decision is based on a record considerably more favorable to the plaintiffs' case than was the record before the defendant. The statute which provides for this review grants the plaintiffs a trial de novo in the District Court. The plaintiffs have taken full advantage of this provision and presented their case in a far more adequate and persuasive manner to this Court than they did before the Patent Office.

Findings of fact and conclusions of law being embodied in the text of this opinion, they are not formally set forth. According to the stipulation entered into by counsel at the trial of this cause, the Court finds

and .adjudges that Claim 38 was properly rejected by the Patent Office. As to Claim 36, judgment will be entered entitling the plaintiffs, jointly, to Letters Patent of the United States for the invention specified in that claim.