**Manuel TURCHAN and Curtis Walker, Plaintiffs,**

v.

**BAILEY METER COMPANY, Defendant.**

**Civ. A. No. 1703.**

United States District Court
D. Delaware.

Sept. 29, 1958.

---

See also 21 F.R.D. 232.

Hugh M. Morris and Andrew B. Kirkpatrick, Jr. (of Morris, Nichols, Arsht & Tunnell), Wilmington, Del., Thomas S. Donnelly, Detroit, Mich., of counsel, for plaintiffs.

Richard F. Corroon and C. Waggaman Berl, Jr. (of Berl, Potter & Anderson), Wilmington, Del., Bruce B. Krost and

Louis V. Granger (of Woodling & Krost), Cleveland, Ohio, of counsel, for defendant.

LAYTON, District Judge.

This is a suit under Title 35 U.S.C.A. Section 146, formerly United States Revised Statutes § 4915, in which the plaintiffs are asking the Court to adjudge that they are entitled to a patent. The judgment requested is that the Commissioner of Patents be advised that the plaintiffs are entitled to a patent provided they otherwise comply with the laws of the United States relating to patents.

The plaintiffs are applicants in a joint application for a patent filed in the Patent Office, and the defendant is the assignee of the entire interest of a patent application filed in the Patent Office by Clarence Johnson. Since Clarence Johnson has assigned his entire right, title and interest to the invention to the defendant, Bailey Meter Company, Johnson is not a party in interest and not a party to this cause of action.

The plaintiffs in this case are Manuel Turchan and Curtis Walker who filed an application for a United States patent, Serial number 606,988 on July 25, 1945, on an invention relating to a hydraulic duplicating lathe attachment.

The defendant, Bailey Meter Company, is a corporation organized and existing under the laws of the State of Delaware and is the assignee of the entire interests of an application for United States Letters Patent, Serial Number 625,237 filed October 29, 1945, by Clarence Johnson.

The application filed by these plaintiffs on July 25, 1945, and given Serial Number 606,988 related to a contour turning lathe for reproducing on metal pieces the shape of a template or pattern used in the operation of the invention. The alleged invention comprises, among other things, a hydraulically operated duplicating mechanism adapted for mounting on a lathe and having a tracer for contacting and riding over the pattern or template. The tracer controls the operation and movement of a cutter operating on a workpiece, so that the cutter reproduces on the workpiece the contour or outline of the pattern or template. According to the specifications of the plaintiffs' claimed invention, the workpiece is mounted on a lathe and caused to rotate, and a cutting tool is also mounted on the lathe and operated to move into engagement with the workpiece and away from the workpiece. This movement of the cutting tool toward and away from the workpiece is effected by a hydraulic motor embodying a cylinder and a piston. The operation of the hydraulic motor is controlled by a tracer mechanism. This tracer mechanism comprises a finger or spindle which engages the edge of a pattern or a template cut to conform to the shape which it is desired to reproduce on the workpiece.

In the present cause of action there is but a single claim involved and this claim reads as follows:

"A contour turning lathe for reproducing tapers, curves, right-angle shoulders or undercut shoulders on the work in conformity with the profile of a template, including a headstock and a tailstock for holding and turning the work, a carriage, means for guiding the carriage longitudinally of the work, means for moving the carriage at a constant rate of advance, a template disposed in fixed position aligned with the axis of the work with its profile in a plane parallel with the cutting plane, a top-slide, a cross-slide movably mounting the top-slide on the carriage whereby the top-slide is adapted to reciprocate at an angle to the axis of the work acute in the direction of carriage travel, tracer mechanism mounted on the top-slide having a finger which engages the template and is universally movable relatively to the tracer mechanism in the plane of said profile and is responsive to relief and impedance from the template, including longitudinal impedance, and a hydraulic system including a motor for reciprocating

the top-slide, said system so connecting the tracer and the motor that actuation of the tracer by the template operates the motor to move the top-slide to neutralize the actuation of the tracer, thus reproducing on the work the profile of the template."

Turchan and Walker filed their application on July 25, 1945, a little over three months before Clarence Johnson filed his application. The Turchan and Walker application went through the process of being prosecuted through the Patent Office and in the course of this prosecution, the Examiner suggested that additional drawings be filed more clearly to show the structure of the tracer mechanisms used in the invention. It is to be kept in mind that tracer mechanisms used on such reproducing machines were generally of the type that were universally movable and the universally movable tracer was well known, both in its construction and in its operation. At the Examiner's request, additional drawings were filed in the Turchan and Walker application showing more in detail the structure of the tracer mechanisms.

The Examiner continued to disallow any claims which were presented by the attorney for Turchan and Walker. After transactions of this sort had gone on for some period of time, a firm of attorneys in Cincinnati was substituted in the application for the attorney in Detroit who had originally filed the application. This firm in Cincinnati had no more success with the Examiner than the Detroit attorney had and the Examiner finally rejected the claims in the Turchan and Walker application. From this final rejection, an appeal was taken to the Board of Appeals. The Board of Appeals confirmed the Primary Examiner in the rejection of the claims, but suggested a claim be filed and stated that it was allowable over the prior art. This claim as suggested by the Board of Appeals was filed in the Turchan and Walker application and became known as Claim 36 in the Turchan and Walker application. The attorney also filed two

other claims known as 37 and 38. Claims 37 and 38 were later cancelled.

When the Claim 36, suggested by the Board of Appeals as being allowable over the prior art, was taken up in the Patent Office by the Examiner, the Examiner rejected the claim for lack of disclosure. The Examiner stated that the application as originally filed did not, among other things, disclose a universally movable tracer. The claim was finally rejected by the Examiner and an appeal was taken to the Board of Appeals.

The Board of Appeals confirmed the Examiner in the rejection for lack of disclosure and held that Turchan and Walker did not disclose a universally movable tracer.

Turchan and Walker then had two courses that they might follow. They might appeal to the Court of Customs and Patent Appeals, or they might bring suit under revised statutes, Section 4915, in the United States District Court for the District of Columbia asking the Court to direct that the applicants were entitled to a patent. Suit was then begun in the United States District Court for the District of Columbia against the Commissioner of Patents under Section 4915 now U.S.C.A., Section 146. In the suit in the United States District Court for the District of Columbia, Turchan and Walker urged that a proper disclosure of the subject matter of Claim 36 was made in the application as originally filed.

After trial in the United States District Court, the Court, speaking through Judge Tamm, held that the applicants Turchan and Walker did make the disclosure under the "Doctrine of Inherency."

About the time that suit was filed by Turchan and Walker, in the United States District Court, Turchan and Walker filed a Continuation or Divisional application. A Continuation or Divisional application is one which is filed while any application is pending, but relates to and discloses the subject matter filed in the earlier application so that

a proper Continuation or Divisional application will be accorded the filing date of the first application. This second application filed by Turchan and Walker was placed in Interference with the application of Clarence Johnson who is involved in this cause of action. The Examiner refused to accord the earlier filing date to Turchan and Walker's later filed application so that Johnson in the Interference became the senior party.

■ This left, in the Interference proceeding, the burden of proof on Turchan and Walker to prove that they were the inventors of the invention prior to Johnson's invention. Had Turchan and Walker been the senior parties, the burden of proof would have been on Johnson. An order was then obtained from the Commissioner of Patents postponing the proceedings on the Interference until a decision was reached in the United States District Court in the case filed by Turchan and Walker.

When the United States District Court for the District of Columbia decided that Turchan and Walker had made sufficient disclosure, Turchan and Walker then filed a motion in the Patent Office to the effect that their earlier filed application be substituted for their later filed application to the Interference.

The Examiner refused to make such substitution on the ground that the earlier filed application did not make the disclosure required, the Examiner thus ignoring entirely the judgment' of the United States District Court.

A petition to the Commissioner of Patents was then filed by Turchan and Walker asking that the Examiner be directed to substitute as requested. This petition was granted and the Examiner was ordered to substitute Turchan and Walker's earlier application in the Interference and such substitution was made. This made Turchan and Walker the senior party so that the burden was then on Johnson to prove prior invention. A motion to dissolve was made by Turchan and Walker for lack of disclosure of the subject matter defined by the claim.

This motion was rejected by the Primary Examiner.

Under the rules of the Patent Office, the Motion to Dissolve must be decided by the Primary Examiner who set up the Interference. In other words, the Motion to Dissolve was a request that the Primary Examiner acknowledge he made a mistake in setting up the Interference. The Primary Examiner overruled the Motion to Dissolve.

Johnson (all actions in the Interference were actually carried on by Bailey Meter Company who is the assignee of Johnson's interests and who is the defendant in the present cause of action) then proceeded to take Depositions attempting to prove priority of invention. Depositions were also taken by Turchan and Walker and the Interference was then submitted to the Board of Interference Examiners. A decision was rendered by the Board of Patent Interferences that Johnson was entitled to priority because Turchan and Walker did not make a disclosure of the invention defined by the claim. A petition for rehearing was filed before the Board of Interference Examiners and the original decision was adhered to.

Under the Rules of Practice of the Patent Office, rule 136, 35 U.S.C.A.Appendix, Turchan and Walker then had thirty days in which to make their next move. In other words, they must appeal to the Board of Customs and Patent Appeals or file suit under Section 146 within thirty days. They elected the latter.

It is customary that, when a suit filed under Section 4915, or the present statute, Section 146, is pending, the Patent Office will not permit the winning party in the Patent Office to proceed to have the patent issued. However, in this case, the usual practice was not followed and Johnson was permitted to proceed and have a patent issued to him embodying the claim which was involved in the Interference and which is involved in the present suit.

The present cause of action is in reality a continuation of the Interference

Proceeding between Turchan and Walker on the one part and Johnson on the other part as the Interference was set up by the Patent Office.

The issues involved are (a) priority and (b) patentability of the subject matter of the claim. However, should it be decided initially that the plaintiffs made no actual disclosure in their original application, that would be an end of the matter. It is to the question of disclosure that our attention must be first directed. As a preliminary to a decision on the question of disclosure, the opinion of Judge Tamm in Turchan v. Marzall, D.C., 105 F.Supp. 266, must be considered. The plaintiffs say that Judge Tamm found both an inherent and actual disclosure and even though they now concede that the doctrine of inherency is not available to them, yet, they contend that I am bound by the decision of the Court to the effect that there was an actual disclosure in the plaintiff's moving papers of a universal tracer finger.

It is regrettable that, on this score, the language of Judge Tamm's decision is not entirely clear. At page 270, he said this:

" * * * At the hearing of this case and again in the brief which they filed after trial, the plaintiffs have traced the operation of this mechanism. Their presentation was based entirely on the language of the original specifications and, concomitantly, the drawings. In so doing, they have made it abundantly clear to the Court that the tracer mechanism described was universally movable. * * * "

But at page 271, he used this language:

"Since the testimony, expert and unrefuted, before the Court is to the effect that one skilled in the art would know from the original application that the tracer mechanism called for in the limitation of the claim here under consideration is to be universally movable to the exclu-sion of any other type mechanism, the Court concludes that there is sufficient disclosure in this limitation."

Based upon the general background of the case as well as the type of testimony offered to Judge Tamm,[1] I believe that his opinion concludes that there was an inherent disclosure only. However, even if he decided also, as he may have, that there was an actual disclosure of a universal tracer finger, with deference, I would not feel bound to accept this conclusion despite Henning v. Hunt, 223 F.2d 926, 933, 42 C.C.P.A., Patents 1064. There the Patent Court felt itself bound by a decision of the United States District Court for the District of Columbia reversing the Board of Appeals of the Patent Office upon the ground that to pass judgment on the District Court's decision would " * * * in effect cause us [U.S.C. of C. and P.A.] to be an appellate tribunal of the district court. Obviously that is not our function."

There are several reasons why I adopt a different view. A Section 4915 proceeding is essentially ex parte. The Patent Office, not Bailey Meter Company, was the defendant. Here the parties are different. The plaintiffs are the same but Bailey Meter Company, not the Patent Office, is a party. Thus, the doctrine of res adjudicata is not available as a defense.

Secondly, being an ex parte proceeding, Bailey Meter Company, a highly interested and informed party, could not participate. In fact, while notified of the proceeding, it barely had time to arrange for the presence (in a spectator capacity only) of its counsel. It alleges that the solicitor for the Patent Office did not present the best possible defense, particularly in his cross examination of plaintiff's witnesses. Moreover, being an ex parte proceeding, the only witnesses were those of the plaintiff. One was Mr. Turchan, a plaintiff. The other was Mr. Sloman, a lawyer-expert, once coun-

---

1. This testimony seems to be directed almost entirely to the doctrine of inherent dis-closure.

**64**

sel for the plaintiffs in this same matter. Obviously, there is reason to assume that their testimony was partial.

Thirdly, Judge Tamm incorrectly concluded that a single plane tracer would not work in this invention. This was not his fault. He was misled by the one-sided testimony [2] offered to him as well as by frequent statements of plaintiff's counsel [3] to the effect that only a universal tracer was workable in the invention. Here, also, the counsel for the Patent Office was apparently not as successful as he might have been in presenting to the Court the other side of the question. Had Judge Tamm realized that a universal tracer was not the only type of tracer which would have worked on the invention, he undoubtedly would have reached a different conclusion. In fact, a single plane tracer will clearly work just as effectively as a universal tracer. The plaintiffs, themselves, conceded the fact by stipulation on the last day of this trial.

Not only is the defense of res adjudicata not available to the plaintiffs but common justice demands, under the circumstances related, that this Court not consider itself bound by the judgment of the United States District Court for the District of Columbia.

 Was there an actual disclosure by the plaintiffs of a universal tracer? In order to ascertain this, we must examine all their moving papers, not as of the date of the Interference proceeding, but as of the time of the actual application for a patent.

Plaintiffs' application as originally filed July 25, 1945, made no reference to any specific type of tracer. Instead, the application contained this statement:

(Def. Ex. 2, page 7) *"As the actual detail and construction of the tracer forms no part of the present invention, its detailed illustration is*

*omitted.* For the purpose of the present invention said tracer is intended merely as an element in a combination which includes an angularly arranged cross-slide support which is adopted to carry a reciprocal cutting tool supporting top-slide, and a tracer relative to a rotatable work piece, and relative to a template respectively. It is further understood that the tracer tip reacts to the contour of the template for effecting reversal of flow of pressure fluid to one end of said cylinder or the other for effecting longitudinally reciprocal feed of said top-slide." (My emphasis.)

While plaintiffs admit that the word "universal" is not used in the specifications or claims as originally filed, they contend that the function of the universal tracer is described in both places. Plaintiff's reasoning goes something like this. From the drawings it is clear there is a lateral thrust on the side of the spindle as it moves and traverses the profile of the template. This combined with the language appearing on page 6 of their specifications as filed, as well as Claim 13, fully and adequately describe a "universal" tracer.

Page 6 of plaintiff's application refers to the drawings and is describing the movement of the carriage 42 and what happens to the tracer tip or finger as it travels in engagement with the profile of the template:

"As carriage 42, upon which said tracer is mounted is fed longitudinally, tracer tip 63 engages the longitudinal edge of said template in a straight line until it reaches the point 69 (the right angle shoulder). At this point, a longitudinal movement of spindle 62 is imparted * * *."

Claim 13 refers to the longitudinal axis of the workpiece and later states

---

2. "It is absolutely essential to the operation of this device that the tracer spindle be universally movable. It couldn't work in any other way." Sloman (DX 4, p. 126).

3. "A tracer spindle swinging in a single plane will not work." Donnely (DX 4, p. 121).

that the top slide is reciprocally mounted to move at an angle to this longitudinal axis and then later at line 8, calls for "a longitudinally moveable fluid control spindle in said tracer."

Thus the plaintiffs are attempting primarily to rely upon the above-mentioned places in the application as filed to show that they allegedly made an actual disclosure of a tracer "finger which engages the template and is universally movable relatively to the tracer mechanism in the plane of said profile."

Now, the plaintiffs seem to be shifting the meaning of the term "longitudinal movement of the tracer finger." In this proceeding, for the first time they contend that this means longitudinal or axially of itself and not longitudinally in a direction parallel to carriage motion. However, plaintiff's expert witness, Sloman (at page 361) admitted at least on two occasions that when the term "longitudinal movement" was used in the specifications on page 6, it related to the longitudinal movements relative to the carriage.

Plaintiffs in this proceeding have attempted for the first time to maintain that a "universal" tracer has to have a tracer finger with the following three characteristics:

(1) Universal movable laterally in a plane perpendicular (normal) to the tracer finger.

(2) Movable axially of itself by a force directly on the end (axially) of the tracer finger such as would be used for die-sinking work.

(3) Movable axially of itself by a lateral thrust.

However, Mr. Gusching testified that it was his understanding that a universal tracer is one "that will respond to forces that are placed on it from a plane that is perpendicular to the axis of the tracer spindle itself, and these forces may be applied on the stylus from any position or universally in this plane from any direction."

Mr. Dicke gave the following definition of a "universal" tracer (p. 573):

"A universal tracer is a tracer that can be actuated from any side of the tracer spindle, throughout 360 degrees of the spindle, the tracer can be actuated by pressing upon it."

Plaintiff's definition seems to be something new, for in the affidavit of Manuel Turchan presented to the Board of Appeals, (DX 3, p. 346), he lists several patents using a "universally movable tracer". However, while the Shaw Patent 1,588,856 and the Turchan & Walker Patent 2,301,719 are there included, they do not meet the definition of "universal" as now defined by plaintiffs. Instead, plaintiffs now term these tracers "multi-lateral".

■ While a patentee may be his own lexicographer and his own grammarian, his words should not mean one thing before the Patent Office and yet another before the Court.

However, it is clear that not every tracer finger having axial movement is necessarily universal. Dicke so testified (TR 560,566,568) as did Gusching (TR 601,605,607). Both were unrefuted.

■ After a careful reading of the transcript and plaintiffs' original application, I find that plaintiffs' application as originally filed did not contain an actual disclosure of a tracer finger movable longitudinally of its own axis in response to a lateral thrust on the tracer finger as the tracer finger moves longitudinally of a lathe. In this connection, the language of the Primary Examiner is quite apt:

" ' * * * there is absolutely no reference in either the specifications or drawings as by inference or otherwise of the present allegation that the tracer is a universal tracer * * *.' The fact that they and others had previously invented a universal tracer does not change the case or the previous patents with the idea that a slide moving at an acute

angle should be actuated by a universal tracer. The slide disclosure in one application and the tracer disclosure in another does not evidence the combination. Either the one or the other has to be modified to create the combination. If the change is an obvious one, as herein considered, it is not patentable. If it is not obvious, then there is no disclosure of it in the original specifications and the same is new matter because it cannot be admitted on the ground of obviousness. In re Scott 1905 CD 688."

■ The decision of the Patent Office should be accepted as controlling unless the contrary is established by testimony which in character and amount carries thorough conviction. Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657; Swayne & Hoyt v. United States, 300 U. S. 297, 57 S.Ct. 478, 81 L.Ed. 659. Tested by this rule, plaintiffs have failed to sustain the burden of proof and the decision of the Patent Office must control.

■ In view of my findings of fact (hereafter specially entered) and conclusions of law, there is no need to consider the question of priority of conception and reduction to practice. While plaintiffs have attempted to raise the question of patentability of defendant's patent, in view of Sanford v. Kepner, D.C., 99 F.Supp. 221; 344 U.S. 13, 73 S.Ct. 75, 97 L.Ed. 12, I hold that where priority of invention is decided against the plaintiff, the patentability of defendant's invention should not be adjudicated.

Plaintiffs' complaint should thus be dismissed.

### Findings of Fact

1. This is an action brought under the provisions of 35 U.S.C. § 146 in which the plaintiffs ask this Court to reverse the award of priority granted to defendant by the Patent Office in a patent interference proceeding. It involves the issue of priority between plaintiffs' patent application Serial No. 606,988 filed July 25, 1945 and defendant's application Serial No. 625,237 of Clarence Johnson filed October 29, 1945 and assigned to defendant (which subsequently issued on January 15, 1957, as patent No. 2,777,351).

2. The count in interference and defining the invention that is subject of this action is as follows:

"A contour turning lathe for reproducing tapers, curves, right-angle shoulders or undercut shoulders on the work in conformity with the profile of a template, including a headstock and a tailstock for holding and turning the work, a carriage, means for guiding the carriage longitudinally of the work, means for moving the carriage at a constant rate of advance, a template disposed in fixed position parallel with the axis of the work of its profile in a plane parallel with the cutting plane, a top slide carrying a work engaging cutting tool, a cross slide movably mounting the top slide on the carriage whereby the top slide is adapted to reciprocate at an angle to the axis of the work acute in the direction of carriage travel, tracer mechanism mounted on the top slide having a finger which engages the template and is universally movable relatively to the tracer mechanism in the plane of said profile and is responsive to relief and impedance from the template, including longitudinal impedance, and a hydraulic system including a motor for reciprocating the top slide, said system so connecting the tracer and the motor that actuation of the tracer by the template operates the motor to move the top slide to neutralize the actuation of the tracer, thus reproducing on the work the profile of the template."

3. The Patent Office decision, which plaintiffs seek to reverse, held that defendant had disclosed the invention defined in the interference count in the defendant's Clarence Johnson application Serial No. 625,237 as filed in the Patent Office on October 29, 1945 (later maturing into patent No. 2,777,351).

4. The Patent Office has consistently held that the plaintiffs did not disclose the invention defined in the interference count in the Manuel Turchan et al. application Serial No. 606,988 as filed in the Patent Office on July 25, 1945, both during ex parte proceedings on the prosecution of the Turchan et al. application and during inter partes proceedings of the interference with Clarence Johnson.

5. In a R.S. § 4915 (35 U.S.C. § 145) action brought by plaintiffs against the Commissioner of Patents in the United States District Court for the District of Columbia on appeal from an ex parte holding of the Patent Office that plaintiffs had not disclosed a universally movable tracer in their said application, it was urged by plaintiffs that a universally movable tracer finger was inherently disclosed in the plaintiffs' application as filed on the ground that no other kind of tracer finger would successfully operate. On the basis of "unrefuted" testimony, and the absence of evidence to the contrary in that action that a tracer finger other than a universally movable tracer would not successfully operate, the District Court for the District of Columbia found that there had been an "inherent" disclosure of a universally movable tracer finger in plaintiffs' application as filed.

6. In the interference proceeding in the Patent Office, the defendant submitted evidence that a tracer finger other than a universally movable tracer finger, to-wit: a single-plane tracer, would successfully operate in the combination and environment of the interference count and the Patent Office so found and therefore determined that there had been no disclosure, inherent or actual, of a universally movable tracer finger in plaintiffs' application as filed and hence not prior to defendant's filing date of October 29, 1945.

7. In the trial of the instant action, the defendant demonstrated that a single-plane tracer finger, that is, one other than a universally movable tracer finger would and did successfully operate in the combination and environment of the sub-

ject count. Plaintiffs, through their counsel, thereupon conceded by a stipulation made in open court that a single-plane tracer finger would and did successfully operate in the combination and environment of the subject count.

8. In the trial of the instant action the plaintiffs, through their counsel, abandoned their prior contention as to there having been an inherent disclosure in plaintiffs' application as filed of a universally movable tracer in the combination and environment of the subject count and instead contended in this action that there had been an actual disclosure in plaintiffs' application as filed of a universally movable tracer finger in the combination and environment of the subject count.

9. In the trial of this action, the plaintiffs through their counsel, conceded and agreed that in order for the plaintiffs to prevail, the Court would have to find in plaintiffs' application as filed an actual disclosure of a universally movable tracer finger in the combination and environment of the subject count.

10. In support of plaintiffs' contention of an actual disclosure in the plaintiffs' application as filed, a witness for the plaintiffs pointed to portions of the plaintiffs' application as filed and stated his opinion that such portions disclosed a tracer finger that was movable longitudinally of its own axis.

11. The plaintiffs' application as filed did not as a fact contain an actual disclosure of a tracer finger movable longitudinally of its own axis in response to lateral thrust on the tracer finger as the tracer finger moves longitudinally of a lathe.

12. The plaintiffs' application did not at the time of filing, nor at any time prior to the filing of defendant's application, actually nor inherently disclose a tracer having a finger universally movable in the plane of the template profile in response to lateral thrust as the tracer moved longitudinally of the lathe, even if it were found, but which is not actually found, that the plaintiffs' application

at the time filed disclosed a tracer finger that was movable longitudinally of its own axis.

13. A tracer finger movable longitudinally of its own axis even if so longitudinally movable along its own axis in response to lateral thrust is not necessarily a tracer finger that is movable universally in the plane of the template profile.

14. A tracer finger universally movable as called for by the subject count is one that is movable universally in a plane normal to the axis of the tracer finger.

15. The plaintiffs failed to submit evidence in the trial of this action "which in character and amount carries thorough conviction" that the award of priority to defendant by the Patent Office was erroneous, under the rule of Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657.