# PODLESAK v. McINNERNEY.

PATENTS; INTERFERENCE; PROOF OF CONCEPTION; DEPOSITIONS; APPEALS; CLAIMS; INTERFERENCE IN FACT.

1. The depositions of parties to an interference, unless corroborated by independent circumstances established by the evidence, are clearly insufficient to prove conception of the invention. (Following *Garrels* v. *Freeman,* 21 App. D. C. 207.)

2. The rule that the failure of a party to an interference to rebut the sworn statement of his adversary that he had fully disclosed the invention to him furnishes strong evidence that the latter is not the prior inventor does not apply where there is no evidence of a complete disclosure, and merely unsatisfactory evidence of a partial disclosure. (Distinguishing *Winslow* v. *Austin,* 14 App. D. C. 137.)

3. The decision of a primary examiner that a party to an interference has the right to make a claim which is the same as a count of the issue of an interference will be reviewed by the court of appeals as an ancillary question to be considered in awarding priority of invention. But where the Examiners-in-Chief and the Commissioner have concurred in this decision, the court will not disturb their finding unless manifest error has been committed.

4. Although where two structures are not specifically the same, and the art does not warrant a generic claim, the language of the claims can be made precise and fittingly descriptive of each structure without the use of identical language, yet general terms may be used which apply equally to two structures which are not the same, as may be shown when those terms are read and construed in the light of the specifications behind them.

5. While the same language may be applied to two structures that are not the same, the employment of such identical language in two claims does not necessarily prove that there is an interference in fact.

6. The meaning given to the counts of an interference must be that intended by the party to the interference first making the claim. (Fol-

lowing *Tracy* v. *Leslie,* 14 App. D. C. 126; *Ruete* v. *Elwell,* 15 App. D. C. 21.)

7. In extreme cases, where palpable error has been committed, a decision of the Patent Office holding identity of invention between the devices of the parties to an interference may be reversed. (Following *Swihart* v. *Mauldin,* 19 App. D. C. 570; *Seeberger* v. *Dodge,* 24 App. D. C. 476, 481.) But the court, although of opinion that error has been committed, may refuse to hold that there is no interference in fact, and may send the case back to the Patent Office for further consideration.

No. 312. Patent Appeals. Submitted November 12, 1905. Decided January 4, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.        *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. C. Le Roy Parker* for the appellants.

*Mr. James F. Williamson* and *Mr. John C. Pennie* for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

This appeal is taken from the decision of the Commissioner of Patents awarding the priority of invention to Benjamin McInnerney. Appellants, Henry J. and Emil Podlesak, assign as errors the findings of the Commissioner that McInnerney was the prior inventor; that there is an interference in fact between the inventions of the interferants; and that McInnerney has a right to make the claim which constitutes count two of the issue.

The record discloses that when the interference was declared there were three counts. After the testimony had been taken the case was remanded to the primary examiner to consider McInnerney's right to make the claim constituting the third count of the issue. It was decided that he had no right to make the

claim. This left the interference with two counts. Thereafter, at the request of the primary examiner, the interference proceedings were again suspended, and the papers transmitted to the primary examiner to consider a newly discovered reference. The examiner decided that the claims constituting the remaining counts were anticipated by a patent to one Tirrell, No. 230,589, July 27, 1880. From this decision an appeal was taken to the Examiners-in-Chief, who held that when the claims were "construed by the specification behind them they were patentable over the reference, and accordingly they reversed the examiner. Judgment of priority was then rendered in favor of McInnerney by the Examiner of Interferences. Upon appeal the Examiners-in-Chief held that count one of the issue was limited to the inclusion of a plurality of springs, and that such limitation rendered the issue inapplicable to McInnerney's construction. In accordance with the rule they called the attention of the Commissioner to the fact that in their opinion McInnerney had no right to make the claim which corresponded to the first count of the issue. They found that he had the right to make the claim constituting the second count of the issue, and as to that issue they awarded priority to McInnerney, and to that extent affirmed the decision of the Examiner of Interferences. An appeal was taken by Podlesak and Podlesak to the Commissioner, who, without deciding the question of priority, remanded the interference to the primary examiner to consider McInnerney's right to claim the first issue, and directed him to consider the right of McInnerney to claim the second count, saying:

"Without expressing any opinion upon the question of the right of McInnerney to make a claim corresponding to count two, it is believed that the conditions of this case are such as to warrant jurisdiction being given the examiner to consider the right of McInnerney to make a claim corresponding to count two when the interference comes before him to consider the question to which attention has been called by the Examiners-in-Chief. This interference is therefore remanded to the primary examiner to consider the matters to which attention has been

called by the Examiners-in-Chief, and jurisdiction is also given to the examiner to consider at the same time the right of McInnerney to make a claim corresponding to count two. The decision on priority of invention is reserved pending the determination of the question of the dissolution of the interference."

Under this authority the primary examiner considered the right of McInnerney to make the claims constituting counts one and two of the issue. He filed a written decision to the effect that McInnerney had no right to make the first claim, but that the second claim could be equally well read upon the structure of both applicants, and that, therefore, McInnerney had the right to make the claim constituting the second issue. From this decision no appeal was taken by McInnerney, and therefore the interference was continued with but one issue. The Commissioner, when the matter next came before him, awarded priority of invention of the second and sole remaining count to McInnerney.

The issue in question is:

"2. The combination, in electrically operated or actuated sparking devices for gas or vapor ignition, of an electro-magnet and its movable armature, with a movable electrode; a means of imparting a separating and contacting blow, successively, from and through the movement of said armature to said movable electrode; an insulated electrode; an electric circuit supplying current to the energizing coils of said electro-magnet and to said electrodes, substantially as and for the purposes set forth."

McInnerney is the senior party, having filed his application November 21, 1899. The Podlesaks filed their application April 2, 1900. The only testimony taken by them upon the question of the date of their invention is their own depositions. The depositions of parties to interferences upon this point, unless corroborated by "independent circumstances established by the evidence," are clearly insufficient to prove conception of an invention. *Garrels* v. *Freeman,* 21 App. D. C. 207.

It is insisted, however, by the appellants, that H. J. Podlesak communicated the invention to McInnerney, and that that fact is proven because not denied by the latter. In *Winslow* v.

*Austin,* 14 App. D. C. 137, this court held that the failure of a party to an interference to rebut the sworn statement of his adversary that he had fully disclosed the invention to him furnished strong evidence that the latter was not the prior inventor. We think the evidence disclosed by the record is not sufficient to warrant the application of that rule in this case. H. J. Podlesak does not claim to have made a complete disclosure to McInnerney. He claims to have made such partial discovery on October 27, 1899. It appears that Foster and Freeman on October 30, 1899, received from McInnerney a letter bearing date of October 25, 1899, and a typewritten description of his invention which is involved in this interference bearing date October 24, 1899, and also a drawing in pencil. It is insisted on the part of appellants that this latter statement and drawing were prepared after the alleged disclosure to McInnerney, and that the papers were antedated. They seek to prove this by showing that a letter mailed in time to be forwarded on a train leaving Omaha (McInnerney's place of residence) at 3:30 P. M. of one day would in the ordinary course reach Washington in the early morning of the second day thereafter. It is claimed by McInnerney that these papers were mailed on October 25, 1899, but it is not shown that they were mailed in time for the train leaving Omaha at 3:30 P. M. of that day. The probability would favor the supposition that they were mailed at a later hour. No facts are given relative to the time when other through mail trains leave Omaha for the East. If the papers left on the same train on the following day they would not have arrived in Washington, if on time, until the morning of Saturday the 28th of October. It further appears that the mails are sometimes delayed twelve or thirteen hours, and if it happened in this instance the papers would not have been delivered until October 30, 1899, for the 29th was Sunday. We think the proof offered is not sufficient to warrant the finding that the papers were prepared and mailed after the alleged disclosure by H. J. Podlesak.

The appellants being entitled to no earlier date of conception than that of the filing of their application, they cannot prevail

if McInnerney is held to be properly a party to the interference, for their application was filed several months after that of Mc-Innerney, the senior party. The Commissioner of Patents, having found there was an interference in fact, and that Mc-Innerney had the right to make the claim, could come to no other conclusion upon the proofs and the law applicable thereto than the one he did, and consequently his award of priority is correct if the remaining questions can be decided in McInnerney's favor.

This brings us to the only serious questions in the case. They are those set out in the second and third assignments of errors, and respectively present for consideration appellants' contention that there is no interference in fact between the inventions of the interferants; and that the appellee has not the right to make the claim which is the subject-matter of the issue.

Considering these assignments of error in the reverse order in which they are set forth, we find that the question of appellee's right to make the claim has received the consideration of the primary examiner, of the Examiners-in-Chief, and of the Commissioner. Where a question such as this has been fully considered by them, and all have concurred in finding a party to an interference has the right to make a claim which is the same as a count of the issue of an interference, their concurrent finding should not be lightly disturbed, and will be ordinarily considered by this court as conclusive. In an *ex parte* case the decision of a primary examiner that a party has a right to make a claim is final, unless, for good cause shown, the Commissioner, under his supervisory powers, takes jurisdiction to review the question. It is generally left to courts in a suit brought, after the issue of the patent, for infringement of a claim thus allowed, to determine whether the patentee ever had a right to make the claim. If, however, an interference involving such claim be instituted, the rules of the Patent Office provide for an examination by the primary examiner of the question of the right of either party to make the claim. If his decision be in the affirmative, the rules do not provide for an appeal to the Examiners-in-Chief. In *Allen* v. *United States, ante,* p. 8, this

court held that, where such a decision was rendered by the primary examiner on a motion to dissolve, no appeal would lie. It was there said that the court had reviewed other ancillary questions when they properly came before it on appeal from final judgments awarding priority of invention. The question of the right of a party to make a claim goes to the very foundation of an interference, for, if a party has not such right, the interference falls. If it be incorrectly held that such party has a right to make the claim, priority may be awarded to him, and his adversary be deprived of a substantial right in that he is not given a claim where he necessarily is the prior inventor, his adversary never having made the invention. Manifestly that question should not be finally determined by the primary examiner who originally declared the interference. We therefore take the jurisdiction to determine that question in this case as an ancillary question to be considered in awarding priority of invention. Where, however, three tribunals of the Patent Office have concurred in answering the question in the affirmative, as they have in this case, we shall follow them unless a manifest error has been committed. Is there such error in this case? Appellants in their appeal from the decision of the Examiner of Interferences raised the question of appellee's right to make the claim. The Examiners-in-Chief considered the question, and after describing the construction and operation of appellee's device, reached the following conclusion: "We do not find, however, that Podlesak and Podlesak should be sustained in their contention that McInnerney is not entitled to make a claim in conformity with count two of the issue. The point that the joint interferants raise in respect to this count has already been referred to herein. McInnerney's construction includes all of the elements of count two, and, considering the slight * * * separation which takes places between the movable and the stationary electrodes, it is apparent that the single spring which actuates the pivoted armature must cause said armature to deliver to the arm of the pivoted electrode a blow which will be effective to some extent in displacing carbon between the two electrodes at the moment of contact."

In view of the fact that the Examiners-in-Chief held that appellee did not have the right to make another claim, the Commissioner, as we have said, withheld his decision on the question of priority, and remanded the case to the primary examiner to consider the right of appellee to make either or both of the claims. The examiner held "that McInnerney is entitled to make the claim forming count two. Every element called for by this claim appears in figure 3 of McInnerney's structure. This conclusion was accepted by the Commissioner. We have examined figure 3 of the drawing referred to, and are of the opinion that the figure discloses a device which may be described in the terms of the sole issue of the interference. We are not, however, satisfied that the claim means the same when applied to the devices of the respective parties. We now only say that we think this claim when broadly considered can be read on the drawing of McInnerney's application. It does not, however, follow that, because the same words may describe two structures that differ materially in construction and in operation, the structures are the same. General terms may be used which apply equally to two structures which are not the same, as may be shown when those terms are read and construed in the light of the specifications behind them. In most cases, however, where two structures are not specifically the same, and the art does not warrant a generic claim, the language of the claims can be made precise and to fittingly describe each structure, so that the use of identical language be avoided. We conclude, though not without some doubt, that McInnerney has the right to make the claim which is the issue of the interference, if that claim be broadly construed.

The last assigned error—no interference in fact—raises the question of identity of the two inventions as summed up in the issue. While, as we have said, the same language may be applied to two structures that are not the same, the employment of such identical language does not necessarily prove that there is an interference in fact. *Edgecombe* v. *Eastman,* 89 Off. Gaz. 707 ; *Goss* v. *Scott,* 96 Off. Gaz. 843.

We are much impressed with appellants' contention that

there is no interference in fact because the two devices are obviously different in structure and operation, and that consequently the terms of the issue, when applied to the two devices, do not mean the same thing. It will be remembered that the primary examiner held the issue to be unpatentable; that the Examiners-in-Chief reversed him upon the ground that this issue, when construed in the light of the specification, required that the "blow" referred to in the claim must be a "contacting blow," and that the device of the reference brought the electrodes into contact without any blow by the armature. It was upon such a narrow construction that the claim was held patentable over the reference. It is the "contacting blow" which apparently gives novelty to the issue. What this "contacting blow" is must be determined by a reference to the appellants' specification, for the issue is a claim first made by them and suggested to the appellee. The meaning given to the counts of an interference must be that intended by the party to the interference first making the claim. *Tracy* v. *Leslie,* 14 App. D. C. 126; *Ruete* v. *Elwell,* 15 App. D. C. 21.

The "contacting blow" is referred to in appellants' specification as the blow which "causes the contact points to come together, driving out from between them any soot or dirt that may have accumulated from the explosion of the charge in the engine cylinder." When so construed we do not think that the term "contacting blow," as employed by the parties, means the same thing in the two claims. It would seem that the examiner when he considered the question of interference in fact, as he did, though, as the Commissioner said, without authority, must have lost sight of the ground on which the Examiners-in-Chief predicated patentability over the Tirrell patent, and of their statement relative to the difference between the device of that patent and the device of the appellants, of which they said: "The difference in the action of the two devices is material, as the present device has superior utility because of the blow given by the armature after the spring has brought the electrodes into more or less feeble contact." He doubtless did not examine the brief of McInnerney, stated to have been filed before the

Examiners-in-Chief when that tribunal was considering the question of patentability. That brief is referred to in appellants' brief, but, as it is not in the record, we cannot consider it. It seems to us that the Examiners-in-Chief in holding the claims to be patentable must have construed them in the light of the Podlesaks' specification, rather than with McInnerney's specification before them.

We do not think the contacting blow of the McInnerney device, if it can be said to have anything more than an impulse, is the "contacting blow" of the Podlesak and Podlesak device.

This court has held that in extreme cases, where palpable error has been committed, the decision of the Patent Office holding identity of invention between the devices of the parties to an interference, may be reversed. *Swihart* v. *Mauldin,* 19 App. D. C. 570, 573; *Seeberger* v. *Dodge,* 24 App. D. C. 476, 481. Nevertheless, while we consider that an error has been committed in this case, we hesitate, at least until the Patent Office has further opportunity to consider this question, to hold there is no interference in fact. As the case is now presented we are unwilling to award priority of invention to the appellee. We think neither party is entitled to a claim for the feature here in controversy, which shall dominate the other. It would seem that the claims presented by both and made the issue of this interference should be so reformed that each should have a specific claim, provided each can draw a claim that avoids the reference. We do not mean to hold that the appellants' claim, which has been held patentable, is not patentable as read in the light of their specification. If, as we think, the claim, read in the light of their specification, means one thing, and the same claim, read in the light of appellee's specification, means another, the same phraseology should not be employed.

We feel constrained to remand the case to the Commissioner of Patents for further consideration as to identity of invention. If after such consideration the Patent Office adheres to the opinion that there is an interference in fact herein, the present interference record, with any additions to it, will be further considered by us.

The opinion and the proceedings in the case will be certified by the clerk to the Commissioner of Patents, according to law.