# COSPER v. GOLD. (1)

---

### PATENTS; APPEALS; INTERFERENCE.

1. The jurisdiction of this court to entertain appeals in patent cases from
   the Commissioner of Patents is limited to two classes of decisions,
   namely, a final rejection of an application for a patent, and a final
   award of priority to one of the parties in an interference case. (Fol-
   lowing *Re Fullagar*, 32 App. D. C. 222.)

2. An order dissolving an interference on the ground that one of the parties
   has no right to make the claims of the issue, being interlocutory, can-
   not be appealed from to this court, independently of a final decision
   putting an end to the litigation through an award of priority to the
   other party; but when a final award has been made the interlocutory
   order may be reviewed on an appeal from the final order, but not
   otherwise. (Citing *Podlesak* v. *McInnerney*, 26 App. D. C. 399, and
   *Re Fullagar*, supra.)

No. 599. Patent Appeals. Submitted November 17, 1909. Decided Decem-
ber 7, 1909.

HEARING on an appeal from a decision of the Commissioner
of Patents in an interference case.          *Appeal dismissed.*

The facts are stated in the opinion.

*Mr. Charles Neave* and *Mr. Robert N. Pierson* for the ap-
pellant.

*Mr. Otto R. Barnett, Mr. A. C. Fraser,* and *Mr. W. A. Redding* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This appeal arose out of an interference proceeding to which the appellant, William P. Cosper, and the appellees, Egbert H. Gold and Edward E. Gold, were parties, each being an applicant for a patent for an improved steam-heating system. Appellant Cosper was the first to file, on April 1, 1901. He was followed by Edward E. Gold on July 16, 1904, and Egbert H. Gold on February 11, 1905.

Repeated objections were made to appellant's application by the Primary Examiner, from time to time, which were followed by many amendments. Finally, five claims made by him were rejected by the Primary Examiner. On appeal to the Examiners-in-Chief this decision was reversed January 8, 1908, and the claims allowed. In March, 1908, the interferences between the respective applicants were declared, on an issue having three counts as follows.

"1. In a steam-heating apparatus, the combination of an apartment to be heated, a radiator therein, a steam-inlet valve for said radiator, and a thermostat in the line of the radiator discharge located on the outside of said apartment, and controlled by changes in the outside temperature so as to vary the normal standard of regulation inversely to the changes in said outside temperature.

"2. In a car-heating apparatus, the combination with the car, of a radiator therein, and an automatic regulator carried by the car, and comprising a steam-inlet valve for said radiator, and a thermostat located below the car in the path of the radiator discharge, and subject to the temperature outside the car.

"3. In a car-heating apparatus, the combination with a car, of a supply pipe, radiator pipes, an outlet into the air from said radiator pipes, and mechanism for automatically controlling the admission of heating fluid from the supply pipe to the radiator

pipes, consisting of an intermediate valve between the said pipes, and thermostatic means exposed to the outer air and to the heat of the discharge from the radiator pipes, and controlling said intermediate valve, whereby the admission of heating fluid from the supply pipe to the radiator pipes is controlled by the temperature of the outer air and that of the said heating fluid after it has passed through the radiator pipes."

Each of the Golds filed a motion to dissolve the interference. The only ground that need be mentioned was that Cosper was not entitled to make the claims. The Examiner to whom the motion was referred decided that Cosper was not entitled to make the claims under his original disclosure. The decision was limited to this. Cosper appealed to the Examiners-in-Chief, who affirmed the decision, and then to the Commissioner who affirmed their decision.

The question turned on the right of Cosper to a thermostat "located on the outside. of the apartment, and controlled by changes in outward temperature."

A thermostat is a device which expands under the influence of heat. In Cosper's arrangement it is placed in the discharge passage from the radiator, and is connected with a steam admission valve in the service pipe leading from the main steam pipe. He stated that his system was particularly adapted for use in railway cars. When steam is first turned on and flows through the main pipe located, always, under the car, the thermostat is cold and contracted, and, the valve being opened, the steam enters the radiator sections and proceeds to heat them. The radiator sections having been cold, a large amount of steam will condense and flow from the discharge pipe as water. This water will become more and more heated as the radiators increase in heat, and some steam will also escape with it through the discharge pipe. This will have the effect to expand the thermostat, which will cause it to move the admission valve, to which it is connected, so as to shut off a further supply of steam to the radiators, until such a time as that the thermostat will begin to grow cold again. The cooling of this thermostat is more effective when exposed to the outer air, as it would be

under the car body. Cosper did not, in his original specifica-
tions, describe the particular location of the thermostat. He
relies upon his original drawings, of which there are two figures
disclosing the arrangement of each element, as sufficiently show-
ing that the location was necessarily under the body of the car.
He relies upon the well-known facts that the steam supply pipe
underlies each car in the train; that the supply pipe for each car
penetrates through the car floor to a connection with the radia-
tor pipe system; and that the radiators are located adjacent to
the car floor. He argues that the discharge must be located
lower than the radiator, or else it will not discharge. The
figures of the drawing, whether drawn to a scale or not, show
the edge of the discharge pipe in which the thermostat is located
as low, and even slightly lower than the train pipe. If this is
intended to represent anything like accuracy the thermostat
would certainly be under the car floor. If not so intended, the
sections of the drawing illustrating it are unnecessarily long.
As indicating that the location was necessarily intended to be
outside the car, and therefore exposed to the open air, the fact
is urged that there is no drain pipe connected with the discharge
to carry the water and steam out of the car, which would have
to be the case if located on the inside instead of the outside.
There seems to be some force in this contention, and it was so
intimated by the court during the argument on behalf of the
first appellee, Egbert H. Gold.

The argument had proceeded upon the assumption that the
decision being to dissolve the interference had also included
an award of priority in favor of one or both of the opposing
parties. Attention was then called by counsel for Edward E.
Gold to the fact that the only decision made and entered was
that the interference be dissolved. Upon the assumption that
the decision was interlocutory, and not final, he moved to dis-
miss the appeal. It was the duty of counsel to have raised the
point *in limine,* but it is a question that cannot be waived, as it
goes to the jurisdiction of the court to entertain the appeal.

We have had occasion heretofore to call attention to the fact
that the jurisdiction of this court to entertain appeals from the

Commissioner of Patents is limited to two classes of decisions, namely, a final rejection of an application for a patent, and a final award of priority to one of the parties in an interference case. *Re Fullagar,* 32 App. D. C. 222–228. It has been settled also that the question of the right of a party in an interference to make the claims of the issue is one that may be raised, decided, and brought up as an ancillary question necessarily involved in that of priority. *Podlesak* v. *McInnerney,* 26 App. D. C. 399–405. The order dissolving the interference on that ground is itself interlocutory, and cannot be appealed from independently of a final decision putting an end to the litigation through an award of priority to the rival applicant. When that final award has been made, the interlocutory order may be reviewed in an appeal therefrom, but not otherwise. See *Podlesak* v. *McInnerney,* supra; *Re Fullagar,* 32 App. D. C. 222–229.

The record shows that there has been no final adjudication of priority in favor of the opposing parties, and we are therefore constrained to dismiss the appeal. The appellant must go back to the Patent Office, there to await a final decision of the Commissioner of the question of priority.

An order will be entered dismissing the appeal, and this decision will be certified to the Commissioner of Patents.

*Appeal dismissed.*