**ELLIS–FOSTER COMPANY and Montclair Research Laboratories, Appellants,**

v.

**UNION CARBIDE AND CARBON CORPORATION.**

**No. 13187.**

United States Court of Appeals Third Circuit.

Argued June 10, 1960.

Decided Nov. 3, 1960.

See also 159 F.Supp. 917.

William D. Burrows, New York City (Steelman, Lafferty, Rowe & McMahon, Newark, N. J., Sol Shappirio, Washington, D. C., on the brief), for appellants.

James A. Fowler, Jr., New York City (Pitney, Hardin & Ward, William P. Reiss, Newark, N. J., Cahill, Gordon, Reindel & Ohl, James B. Henry, Jr., William Jannen, Jr., Watson, Leavenworth, Kelton & Taggart, John T. Kelton, R. S. Nelson, New York City, on the brief), for appellee.

Before BIGGS, Chief Judge, and KALODNER and FORMAN, Circuit Judges.

BIGGS, Chief Judge.

This is an appeal from an order of the court below dismissing an action brought by the plaintiffs pursuant to Section 146 of Title 35 U.S.C. on the ground that jurisdiction of the subject matter was lacking. For purposes of clarity the appellants, Ellis-Foster Company and Montclair Research Laboratories will be designated as the plaintiffs, and the appellee, Union Carbide and Carbon Corporation, will be called the defendant.[1]

On June 27, 1946, the plaintiffs-appellants, Ellis-Foster Company and Montclair Research Corporation, filed their patent application No. 679,856. On October 9, 1946 the defendant-appellee, Union Carbide and Carbon Corporation, filed its patent application No. 702,084. On March 17, 1953 the defendant's application resulted in the issuance of patent No. 2,632,013. Claim 2 of the patent was as follows: "A process for the production of organo-silicon compounds which comprises reacting an alkyne with a silane of the group consisting of halogenosilanes and alkoxysilanes having at least one Si-H bond while heating the reactants at substantially constant volume and at a temperature not substantially above 350° C."

Thereafter, on April 10, 1953, the plaintiffs amended their application to copy into it Claim 2 as quoted above. On May 18, 1953, the Primary Examiner in the Patent Office declared an interference, No. 86,436, with Claim 2 as the count in interference. The defendant then filed a motion under Rule 232 of the Rules of Practice of the Patent Office, 35 U.S.C.Appendix to dissolve the interference on several grounds, one being the alleged failure of the plaintiffs' specifications to disclose the subject matter of the count and other grounds being that the plaintiffs were not entitled to assert the claim because of abandonment and estoppel. The plaintiffs moved also to dissolve the interference under Rule 232 but the issues raised by that motion were deferred until final hearing. The Primary Examiner, holding that the plaintiffs' right to assert the claim was not invalidated by abandonment or estoppel and that the plaintiffs' specification sufficiently disclosed Claim 2, quoted above, denied the defendant's motion to dissolve the interference.

The plaintiffs, the senior parties, chose to offer no testimony. The defendant, the junior party, took testimony and introduced exhibits to show that the invention had been conceived about August 1945 and had been reduced to practice during the period from November 1945 to February 1946. The interference proceeding then went to final hearing before the Board of Patent Interferences.

The Board concluded for reasons that need not be stated here that the plaintiffs were not estopped to contend that their specifications taught Claim 2 as quoted above and that the defendant's specifications contained a specific example which read on that count. The Board held also that it was unnecessary to discuss the

---

[1]. Ellis-Foster Company and Montclair Research Corporation, the plaintiffs below, are assignees of Charles A. MacKenzie, Leonard Spialter and Milton Schoffman. The defendant is assignee of George H. Wagner and Corneille O. Strother. Although the parties appear variously in the record under the names of their predecessors in interest they will be referred to in this opinion, as plaintiff and defendant, respectively. .

These predecessors in title of the parties to the suit at bar are referred to in the interference proceedings in the Patent Office in various ways. In the proceedings before the Primary Examiner, Wagner and Strother, the assignors of the defendant, Union Carbide and Carbon Corporation, are referred to as "Wagner" and in the proceedings before the Board of Patent Interferences as "W and S". In the proceedings before the Primary Examiner, MacKenzie, Spialter and Schoffman are referred to as "MacKenzie" and in the proceedings before the Board of Patent Interferences as "MSS".

evidence adduced by the defendant as to priority of invention because the plaintiffs' specifications did not sufficiently teach a disclosure which was readable on Claim 2, contrary to the Primary Examiner's conclusions in this regard; and that therefore the defendant was entitled to prevail. The Board then stated: "Priority of invention of the subject matter in issue is hereby awarded to [the defendant], the junior party."[2] This can be stated in other words as follows: Since the plaintiffs could not make a valid claim for the invention because their specifications did not disclose it, priority had to be awarded to the defendant, there being no valid claim in the plaintiffs on which any assertion of priority could be bottomed by them.

Here, of course, arises the anomaly presented by the case at bar. The Primary Examiner decides many issues on interference including adequacy of disclosures by specifications in relation to claims, estoppels, patentability, and informalities which may preclude the proper determination of the question of priority, but he may not make an "award of priority". See Rule 232 of the Rules of Practice of the Patent Office. If the Primary Examiner grants a motion to dis-solve the interference on an issue ancillary to priority, as he did not do in the instant case, in effect he decides the issue of priority, for the winning party of necessity has priority over the losing party who retains no status at all. If the Primary Examiner denies all motions, as here, depositions are taken, briefs are filed, and the interference goes to final hearing before the Board of Patent Interferences, as it did here. The Board of Patent Interferences proceeds to decide the question of priority and makes an award of priority as it did here. In determining priority the matters to be considered are set out carefully in Rule 258.[3] But the anomaly arises from the fact that the Board of Patent Interferences, while determining priority, in fact may determine and frequently does determine the right of the parties to the interference to make the claim by determining, as happened here, that the specification of one party did not sufficiently disclose the claim. In short the Board of Patent Interferences decided in the case at bar as it frequently does in cases presenting analogous circumstances, that priority should be awarded to the junior claimant, the defendant, because the senior party, the plaintiffs, could not

2. This very pertinent portion of the Board's opinion is quoted in the opinion of the court below, D.C., 179 F.Supp. at page 178, as follows: "The question of support for the count in the MSS (plaintiffs here) application was considered by the Primary Examiner and decided favorably to MSS. The Primary Examiner's decision will be considered on review to the extent that there is raised a question ancillary to priority, namely, whether or not the MSS application sufficiently teaches a disclosure upon which the count is readable * * *. Priority of invention of the subject matter in issue is hereby awarded to George H. Wagner and Corneille O. Strother, the junior party (defendant here)."
   See also note 1, supra.

3. Rule 258 of the Rules of Practice is as follows:
   "In determining priority of invention, the Board of Patent Interferences will consider only priority of invention on the evidence submitted. Questions of patent-ability of a claim generally will not be considered in the decision on priority; and neither will the patentability of a claim to an opponent be considered, unless the nonpatentability of the claim to the opponent will necessarily result in the conclusion that the party raising the question is in fact the prior inventor on the evidence before the Office, or relates to matters which have been determined to be ancillary to priority and must be considered, but a party shall not be entitled to raise such non-patentability unless he has duly presented and prosecuted a motion under rule 232 for dissolution upon such ground or shows good reason why such a motion was not presented and prosecuted.
   "The matters raised on a motion relating to the burden of proof (rule 235) may be reviewed at final hearing.
   "At final hearing between an application and a patent the prior art of record in the patent file may be referred to for the purpose of construing the issue."

validly assert the claim. Thus, the Board made an award of priority on the basis of its resolution of the question of the plaintiffs' right to make the claim. That decision, had it been made by the Primary Examiner in the first instance, would have resulted in an unreviewable order dissolving the interference.

On the basis of the opinion of the Board the court below found that " * * effectively, in spite of some of the language used in its opinion, the Board dissolved the interference." The court also said that "[T]he language of the last sentence quoted from its decision in nowise refers to an examination of evidence of priority, and is rendered inept since there could be no question * * * of a patent." D.C., 179 F.Supp. 177, 178. It is the nature of the Board's decision that presents the prime issue in this case. The jurisdiction of a United States district court under Section 146, Title 35 U.S.C., is limited to actions brought by "[A]ny party to an interference dissatisfied with the decision of the board of patent interferences on the question of priority, * * *". Whether the decision of the Board in the present case was a decision "on the question of priority" within the purview of the patent law is the question that we must decide.

The defendant makes two arguments in support of the decision of the court below. First, it contends that Section 146, Title 35 U.S.C. does not confer jurisdiction on a United States District Court to consider a decision of the Board of Patent Interferences on a question ancillary to priority which, had it been decided correctly by the Primary Examiner when presented on a motion to dissolve, necessarily would have resulted in a dissolution of the interference. In support of this proposition the defendant insists that the remedy under Section 146 must be limited to a consideration of decisions "on the question of priority"

and argues that a decision on a question such as that framed by the circumstances of this case is, in reality, a finding that no interference existed at all and is not a decision on the question of priority. The defendant asserts further that under Section 146 the Commissioner of Patents is not a necessary party and contends that for this reason the question of a right to make the count, involving a "public interest", may be considered only in an *ex parte* proceeding where the Commissioner is necessarily a party.

The defendant's second argument is that even if a remedy under Section 146 is available where the Primary Examiner erroneously denied a motion to dissolve and a judgment of priority is entered by the Board of Patent Interferences, that remedy should not be available in the case at bar, since the Board's decision was, in substance, an order granting the defendant's motion to dissolve and such an order is not reviewable under the statute. This latter argument was accepted by the court below.

We think that both the defendant's contentions are without merit. First, we will endeavor to show that under the law in effect prior to the enactment of Section 146 in 1952, the courts had jurisdiction to grant a remedy where the decision at final hearing turned on a point which, if decided correctly by the Primary Examiner, would have resulted in a dissolution of the interference. We shall then try to demonstrate that none of the 1952 amendments to the prior law, codified 66 Stat. 792, 35 U.S.C. § 1 et seq., required a change in this procedure. Finally, we will distinguish the decision of the Board in the present case from a decision which is in effect an order granting a motion to dissolve, thus demonstrating that the decision of the Board in the instant case is reviewable.

The first issue to be determined is whether, under the prior law,[4] a decision rendered on a question ancillary to

4. 16 Stat. 205 (1870), as amended 44 Stat. 1336 (1927), as amended 45 Stat. 1476 (1929) as amended 53 Stat. 1212 (1939), 35 U.S.C. § 63 (1946 ed.) provided:

"Whenever a patent on application is refused by the Board of Appeals or whenever any applicant is dissatisfied with the decision of the board of interference ex-

priority, which would have resulted in dissolution of an interference had the Primary Examiner entered the decision on a motion to dissolve, was a basis for a review in the courts. The defendant not only concedes but affirmatively contends that the question decided by the Board in the present case is one that is ancillary to priority. That a question of the right to make the count in interference, such as is here involved, is a question that is ancillary to priority was decided in Podlesak v. McInnerney, 1906, 26 App.D.C. 399. See the full discussion of ancillary questions in Snelling v. Brooks, 1919, C.D. 40, 261 O.G. 412. The significance of a question being designated as "ancillary" is that it may be considered by a tribunal whose jurisdiction is limited to determination of the question of priority. Before the Podlesak decision the question of the right to make the count was remanded, pursuant to what is now Rule 259, to the Primary Examiner as a basis for a possible dissolution of the interference. See Judd v. Campbell, 1903 C.D. 502, 107 O.G. 2527. It is now settled that only non-ancillary questions are remanded under Rule 259. The reason for changing the practice has been stated as follows: "The question of the right of a party to

make a claim goes to the very foundation of an interference, for, if a party has not such right, the interference falls. If it be incorrectly held that such party has a right to make the claim, priority may be awarded to him, and his adversary be deprived of a substantial right, in that he is not given a claim where he necessarily is the prior inventor, his adversary never having made the invention. Manifestly that question should not be finally determined by the primary examiner who originally declared the interference. We therefore take the jurisdiction to determine that question in this case as an ancillary question to be considered in awarding priority of invention." Podlesak v. McInnerney, supra, 26 App.D.C. at page 405

This reasoning was carried to a logical conclusion, and the practice based on it is fully outlined in Brown v. Hodgkinson, 1906 C.D. 290, 123 O.G. 2973. In the cited case Brown moved, before the Examiner of Interferences,[5] that the interference be remanded to the Primary Examiner for further consideration of the right of Hodgkinson to make the claim in issue. The Examiner of Interferences agreed with Brown and pursuant to what

---

aminers, the applicant, unless appeal has been taken to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided, in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal or decision; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication and otherwise complying with the requirements of law. In all cases where there is no opposing party a copy of the bill shall be served on the commissioner;

and all the expenses of the proceedings shall be paid by the applicant, whether the final decision is in his favor or not. In all suits brought hereunder where there are adverse parties the record in the Patent Office shall be admitted in whole or in part, on motion of either party, subject to such terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court may impose, without prejudice, however, to the right of the parties to take further testimony. The testimony and exhibits, or parts thereof, of the record in the Patent Office when admitted shall have the same force and effect as if originally taken and produced in the suit."

5. The Examiner of Interferences then occupied a position in the hierarchy of the Patent Office substantially similar to that subsequently filled by the Board of Patent Interferences.

is now Rule 259,[6] called the issue of Hodgkinson's right to make the claim to the Commissioner's attention. The Commissioner then remanded the case to the Primary Examiner for further consideration. Brown, believing that he was entitled to an award of priority based on the conclusion of the Examiner of Interferences, brought a motion to secure such action. In an instructive opinion the Commissioner stated:

"In certain cases, like the present case, the decision upon matters to which attention is called under * * * [Rule 259] * * * has an effect similar to a determination which of the parties is the prior inventor. The question is whether it would not be an improvement upon the present practice if the Examiner of Interferences in these cases would make his opinion the basis of a judgment upon priority of invention instead of calling attention to the supposed facts under * * * [Rule 259] * * * I am of the opinion that it would be an improvement, for the following reasons: As was pointed out by the court of appeals in Podlesak and Podlesak v. McInnerney, (post, 558; 120 O.G. 2127,) a decision holding erroneously that one party has a right to make claims, if not set aside, will, under certain conditions similar to the supposed conditions of the present case, result in the grant of a patent to one who is not the first inventor and in the loss of a patent by one who, as between the parties, is the first and only inventor of the matter in issue. The court said, further, in the same decision that such a question should manifestly not be finally determined by the Primary Examiner who declared the interference. To refer such a question to the Primary Examiner under * * * [Rule 259] * * * is exactly, therefore, what is discountenanced by the court, for under long-established practice, sound in principle as a general proposition, the affirmative decision of the Primary Examiner upon matters of merits thus referred to him is final. If matters are made the basis of a judgment of priority of invention instead of being referred to the Primary Examiner, the defeated party will have the right of appeal, and this will be true though the decision involves an affirmation of the successful party's right to make claims. Clearly a party whose right to a patent is denied by an affirmance of another's right to make claims should be permitted to contest the decision against him through the full course of appeal, and I see no more direct and desirable mode of securing this result than by making the decision one upon priority of invention.

"There is another reason why the right of a party to make claims, where an affirmance will determine adversely the right of another party to a patent, should be considered at final hearing as a question of priority of invention instead of upon reference under * * * [Rule 259]

6. Rule 259 of Rules of Practice of the United States Patent Office in Patent Cases, September 1955, is as follows:

"The Board of Patent Interferences may, either before or concurrently with their decision on the question of priority, but independently of such decision, direct the attention of the Commissioner to any matter not relating to priority which may have come to their notice, and which in their opinion establishes the fact that no interference exists, or that there has been irregularity in declaring the same, or which amounts to a bar to the grant of a patent to either of the parties for the claim or claims in interference. The Commissioner may suspend the interference and remand the case to the primary examiner for his consideration of the matters to which attention has been directed if such matters have not been considered before by the examiner, or take other appropriate action. If the case is not so remanded, the primary examiner will, after judgment on priority, consider such matters, unless the same shall have been previously disposed of by the Commissioner."

* * * as a question of dissolution. In the former case the course of appeal is direct through the various tribunals of this Office to the court of appeals, if that court will entertain that question when so presented. I am led to believe that the question will be so entertained from the decisions in the cases of Allen, Commissioner of Patents v. The United States of America, ex rel. Lowry and Planters Compress Company, (C.D., 1905, 643; 116 O.G. 2253,) and Podlesak and Podlesak v. McInnerney, (post, 558; 120 O.G. 2127). When the question is treated under * * * [Rule 259] * * a holding that there is no right to make claims is appealable through the various tribunals of this Office, and if not disturbed thereupon the interference is dissolved, since the court of appeals will not entertain an appeal upon the reference. The party whose right to claim is denied may return to the Primary Examiner and institute another course of appeal through this Office in order that he may have his appeal to the court. After all the court may reverse the conclusion of the Office, and the other interferant may in the meantime have obtained his patent. There seems to be no room for question which of these courses is the better.

* * * * * *

"It is ordered that the jurisdiction of the Primary Examiner be withdrawn and that the case be remanded to the Examiner of Interferences, who is authorized to render judgment of priority of invention according to his convictions in view of such evidence as is properly before him, including the applications and patents of the parties. The Examiner of Interferences will not consider questions regarding Hodgkinson's right to his reissue patent which do not affect the determination of priority of invention. Consideration of these questions is reserved until the question of priority has been fully finally determined, unless otherwise hereafter directed."

As in the case at bar the question in the foregoing cases was what procedure would be most desirable when it is decided at final hearing that one party has no right to make the count. The suggestion that the case be remanded to the Primary Examiner under Rule 259 for further consideration was rejected. Nor did the Commissioner approve the very similar procedure sought by the defendant in the present case; viz., that the interference be terminated at final hearing thus leaving the losing party to whatever remedies he might obtain by commencing *ex parte* proceedings. On the contrary it was decided by the Commissioner that the better procedure was to consider a decision on the right to make the count as a decision on the question of priority thus clearing the way for the full course of review and a final disposition of the matter. In accord with the foregoing, the reports are replete with cases in which review was had of awards of priority bottomed on a decision that one party had no right to make the count. See, e. g., Minnesota Mining & Mfg. Co. v. Carborundum Co., 3 Cir., 1946, 155 F.2d 746, 749; Smith v. Carter Carburetor Corp., 3 Cir., 1942, 130 F.2d 555; Kirschbraun v. Doherty, 1937, 90 F.2d 251, 24 CCPA 1183. We conclude, therefore, that under the practice established prior to the codification and revision of 1952, a decision rendered on a question ancillary to priority, a decision which would have resulted in dissolution of the interference had the Primary Examiner not erred when presented with a motion to dissolve, was subject to remedy or to review in the courts.

It remains to consider whether the 1952 codification and revision of the Patent Laws changed this practice. The defendant points to the fact that while old Section 63 granted a remedy to "any applicant dissatisfied with the decision of the board of interference examiners", Section 146 grants a remedy to "[A]ny party to an interference dissatisfied with

the decision of the board of patent interferences on the question of priority." It is argued that where, as here, the interference should have been dissolved initially, a decision of the Board made possible only by that error should not be considered "on the question of priority". In this connection it should be pointed out that under present Patent Office practice the question of a right to make a count, even when raised on a motion to dissolve is often deferred until final hearing and there made the basis of a judgment of priority. It is, therefore, not as anomalous as it may first appear to have that question determined in the negative at final hearing as here. It must be realized also that the courts under the prior law were likewise limited in their review of Patent Office Proceedings to decisions "on the question of priority". See United States ex rel. Lowry v. Allen, 203 U.S. 476, 27 S.Ct. 141, 51 L.Ed. 281, 1906 C.D. 765, and 2 Walker On Patents, (Deller's ed. 1937) p. 944 et seq. The courts are similarly limited in review under Section 146 of the present law. The defendant is here seeking a substantial change in a practice of long standing basing its contention on a change in language which is very nearly neutral. It does not challenge the reasoning of the Commissioner in the Brown and Podlesak, decisions, supra, which argue strongly for an unobstructed review of issues such as those presented at bar. The defendant does, however, make the argument that since there is a "public interest" in a correct determination of the question of whether a claim can be made, the Commissioner of Patents, under a correct application of the law should be an indispensable party to any proceeding determining that issue.

We have said that the language changes in Section 146 over old Section 63 are very nearly neutral. The most important one, relative to the issues at bar lies in the addition of the fourth sentence of the second paragraph to Section 146. This provides: "The Commissioner shall not be a necessary party but he shall be notified of the filing of the suit by the clerk of the court in which it is filed and shall have the right to intervene". The legislative history of the sentence quoted is very brief. S.Rep. No. 1979, U.S.Code Cong. & Ad.News, 82nd Cong. 2d Sess., p. 2416 (1952), states: "The fourth sentence is new and prevents such suits from being filed against the Commissioner as a defendant; however, the Commissioner has the right to intervene." The practice, as we have demonstrated, was well established and we think the conclusion is a very supportable one that had Congress intended to change it, it would have indicated that desire in unmistakable language both in the new statute itself and in its accompanying legislative history. The Commissioner is given the right to intervene and he will do so we assume, if in his judgment, the public interest requires that course. Once he has intervened his opportunity to protect the public is as complete as if he were an indispensable party. Section 146 in effect codifies what may be described as a streamlining procedure whereby the parties to an interference may have a prompt final determination at a stage when all testimony and argument relative to the issue of priority have been presented. Such a result seems eminently desirable. If on the other hand, were we to follow the procedure sought by the defendant the interference would be declared to be dissolved, and Section 146 would be inapplicable, forcing the losing party to press his claim through the whole of the complex Patent Office procedures, probably finally requiring him to bring an infringement suit or an action under Section 291, Title 35 U.S.C., to determine the very issue determinable at an early stage under Section 146. The preferable course of an early determination of the vital issue of priority has been approved by the Court of Patent Appeals in Vandenberg v. Reynolds, 1957, 242 F.2d 761, 44

CCPA 873,[7] albeit in a proceeding relating to Rule 56, "Improper application", but the analogy is persuasive.

■ In view of the foregoing we hold that an award of priority by the Board of Patent Interferences based on the resolution of a question that is ancillary to priority, which decision had it been made correctly by the Primary Examiner in the first instance would have resulted in the dissolution of the interference, is a decision "on the question of priority" within the meaning of Section 146.

■ This brings us to the defendant's second contention, which is that even granting our conclusion above, the decision of the Board in the present case is not one "on the question of priority" since it was, in effect, an order granting a motion to dissolve which is an unreviewable order. As established above a decision by the Board on an ancillary question, such as this one, may form the basis of an award of priority which may in turn be the basis for a court administered remedy. But, it is equally clear that not all decisions on ancillary questions are reviewable. It has long been settled that an order by the Primary Examiner sustaining a motion to dissolve even though on grounds ancillary to priority, is interlocutory in nature and may not be reviewed. See, e. g., Cosper v. Gold, 1910, 34 App.D.C. 194; American Cable Co. v. John A.

Roebling's Sons Co., 1933, 62 App.D.C. 168, 65 F.2d 801. It follows, as was noted by the court below, that if the decision of the Board of Patent Interferences was in substance the granting of a motion to dissolve, this action will not lie merely because the Board labels its decision one "on the question of priority". Carlin v. Goldberg, 1917, 45 App. D.C. 540. Cf. In re Zalkind, 126 F.2d 835, 29 CCPA 957, rehearing denied, 1942, 128 F.2d 264, 29 CCPA 1275.

We point out that in the case at bar the Board did not dissolve the interference. The Board did award priority. Compare the operative facts at bar with those of Carlin v. Goldberg, supra, heavily relied on by the defendant. In that case Goldberg moved to dissolve the interference on the ground that Carlin had no right to make the count. This motion was granted by the Primary Examiner thus precluding either party from taking testimony. Carlin then succeeded in having the Commissioner change the order of dissolution to a judgment of priority so that he could obtain review. The Court of Appeals held that it had no jurisdiction to review the "judgment of priority" explaining its decision as follows: "Let us consider for a moment where the appeal, if we were to take jurisdiction, would logically lead. If we should review the Commissioner on the question of priority, the only decision from which an appeal will lie to this court in an interference proceeding, it would

7. In Vandenberg v. Reynolds, 1957, 242 F. 2d 761, 765, 44 CCPA 873, the court reversed the Commissioner's determination that in an interference proceeding the question whether a party's application was improperly altered after it was executed should not be passed upon during the interference but should be considered *ex parte* upon final determination of priority. The court held that the question presented was ancilliary to priority. In answer to the contention that "[S]ince the striking of an application from the files is punitive in nature, if such penalty is exacted, it should be to the benefit of the public through an ex-parte proceeding * * *.", the court said in part: "In the interest of orderly procedure and the conservation of judicial man hours, both here and in the Patent Office, it seems to us that any issue which may be determinative of the continuance or outcome of an interference should be decided by the tribunal having jurisdiction thereof when it is first properly raised and not postponed until after the consideration of the usually complex factual issues involved in the merits of priority disputes. In this case the issue which was left undecided and deferred by the Assistant Commissioner has been elaborately briefed and argued, along with the strictly priority questions, both here and before the board, all to no avail for want of an initial decision."

operate as a grant of priority to Carlin, the junior party, without giving Goldberg, the senior party, his day in court on that issue." 45 App.D.C. at page 544. The lack of application of the Goldberg decision to the case at bar is apparent. In the Goldberg case, unlike the case at bar, no testimony was taken and there was no final hearing before the Board.

The defendant's contention that the decision of the Board was in effect an order granting a motion to dissolve ignores the critical distinction between such an order and a decision of the Board based on an ancillary question after the motion to dissolve has in fact been denied by the Primary Examiner. When the Primary Examiner grants a motion to dissolve the interference, no testimony has as yet been taken or briefs submitted on the question of priority. If, however, such a motion is denied by the Primary Examiner, albeit incorrectly, testimony is taken and briefs are submitted for the final hearing before the Board. Thereafter, when the Board awards priority by resolving a question ancillary to priority, the resources of the Patent Office and of the parties have been committed to its resolution, thus justifying and permitting a final determination of the controversy by direct judicial review. This is the critical distinction between the granting of a motion to dissolve by the Primary Examiner and an award of priority by the Board by the resolution of a question ancillary to priority. If, therefore, in the present case testimony was taken and the case was considered fully on the merits, the decision must be deemed to have been "on the question of priority." In the case at bar after the defendant's motion to dissolve was denied by the Primary Examiner, a full opportunity to take testimony was given to both parties as we have pointed out. Only the defendant elected to do so. The plaintiffs pre-sumably planned to rely on other grounds at final hearing before the Board. After final hearing, the case having been fully briefed and argued, the Board rendered its decision. An examination of the Board's opinion shows that it decided first, that under no possible contingency would it be required to consider the defendant's testimony. This was so because if the plaintiffs had no right to make the count, testimony as to conception and reduction to practice was immaterial for the defendant would be entitled to a judgment of priority. If, on the other hand, the plaintiffs did have a right to make the count, the defendant would be estopped and the plaintiffs would be entitled to a judgment of priority. The Board then went on to consider what it deemed to be the critical question in the case; viz., whether the plaintiffs had a right to make the count in interference. It considered the question, and properly, as a question ancillary to priority. Finally, the Board found that the plaintiffs' application did not support the count and, therefore, awarded priority to the defendant. It thus appears that the Board gave the case full consideration on the merits. True, it did not consider the defendant's testimony, but this was due not to the fact that it was granting a motion to dissolve but because the fullest consideration of the question of priority did not demand on examination of that testimony. It follows that the Board of Patent Interferences rendered a decision "on the question of priority." In short the Board did precisely what it said it did. The District Court, therefore, had jurisdiction of the subject matter pursuant to Section 146, Title 35, U.S.C.[8]

The judgment will be reversed and the case remanded for determination of priority as required by Section 146, Title 35, U.S.C.

8. The United States District Court for the Eastern District of Pennsylvania in the case of Radio Corporation of America v. Philco Corporation, D.C.E.D.Pa. 1960, 187 F.Supp. 940, reached a like de-cision on substantially similar facts albeit on somewhat different reasoning. See also Turchan v. Bailey Meter Co., D.C.D.Del.1958, 167 F.Supp. 58.